**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
_____
                                :
MICHELLE ROCHE, JAY MINERLEY,   :
and TIM SINGLETON,              :
Individually and as Class       :   Civil No. 13-1377 (NLH/KMW)
Representatives,                :
                                :           OPINION
            Plaintiffs,         :
                                :
        v.                      :
                                :
AETNA, INC., AETNA HEALTH,       :
INC. (a NJ corp.), AETNA        :
HEALTH INSURANCE CO., AETNA     :
LIFE INSURANCE CO., and THE     :
RAWLINGS COMPANY, LLC,          :
                                :
            Defendants.         :
_____ :
```

**APPEARANCES:**

```
KLEHR HARRISON HARVEY BRANZBURG LLP
By:  Charles A. Ercole, Esq.
     Carianne P. Torrissi, Esq.
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002

and

KANNEBECKER LAW
By:  Charles Kannebecker, Esq.
104 West High Street
Milford, Pennsylvania 18337
     Counsel for Plaintiffs

LOWEY DANNENBERG COHEN & HART, P.C.
By:  Uriel Rabinovitz, Esq.
     Richard W. Cohen, Esq. (pro hac vice)
     Gerald Lawrence, Esq. (pro hac vice)
One North Broadway, Suite 509
White Plains, New York 10601-2310
     Counsel for Defendants
```

**HILLMAN**, United State District Judge:

This suit concerns alleged violations of New Jersey's insurance regulation laws brought by Plaintiffs Jay Minerley and Tim Singleton ("Plaintiffs") both individually and as putative class representatives against Defendants Aetna, Inc., Aetna Health, Inc., Aetna Health Insurance Co., and Aetna Life Insurance Co. (collectively, the "Aetna Defendants") and The Rawlings Company, LLC ("Rawlings" and collectively with the Aetna Defendants, "Defendants").  Presently before the Court is Defendants' Motion for Summary Judgment ("Defendants' Motion" or "Defs.' Mot.") [Dkt. Nos. 18, 40].  For the reasons set forth below, Defendants' Motion will be **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff Jay Minerley was involved in a car accident on May 20, 2010 in Morris County, New Jersey.  (Defs.' Statement of Material Facts ("DSMF") [Dkt. No. 20] ¶ 13.)  Minerley suffered injuries, and in the course of treatment for his injuries, he received benefits under his health insurance policy issued by the Aetna Defendants.  (DSMF ¶ 14; Pls.' Responsive Statement of

_____

[1] The Court recites those facts relevant to deciding the pending motion for summary judgment, and resolves any disputed facts or inferences in favor of Minerley and Singleton, the nonmoving party.  Trinity Indus., Inc. v. Chi. Bridge & Iron Co., 735 F.3d 131, 134–35 (3d Cir. 2013).

Material Facts ("PSMF") [Dkt. No. 24-6] ¶ 14; Compl. [Dkt. No.
15] ¶¶ 14, 16.)  Plaintiff Tim Singleton was involved in a car
accident on December 4, 2006 in Pike County, Pennsylvania.
(DSMF ¶¶ 22-23.)  Similarly, Singleton suffered injuries and
received benefits under a health insurance policy issued by the
Aetna Defendants.  (DSMF ¶ 25; PSMF ¶ 25; First Am. Compl.
("FAC") [Dkt. No. 15] ¶¶ 15-16.)

There is some dispute about what insurance policy covered
Minerley.  Defendants assert that Minerley received benefits
from an employee group Pennsylvania HMO plan sponsored by Weiss-
Aug Company, Inc. and fully insured by Aetna Health Inc. (the
"Weiss-Aug HMO Plan").  (DSMF ¶¶ 14, 16-17.)  Minerley denies he
was covered by this insurance plan and denied that the
certificate of coverage that Defendants refer to with respect to
this plan is applicable to him.  (PSMF ¶¶ 14, 16-17.)  Minerley
submits to the Court that he only received information about a
group insurance policy from his employer.  (See Minerley Decl.
[Dkt. No. 24-3] ¶¶ 5-8, Ex. 1.)  The policy indicates that it is
to be governed by the laws of New Jersey.  (See Minerley Decl.
Ex. 1.)  Defendants submit a slightly different policy that
explains it will be governed by the laws of Pennsylvania.  (See
Goodrich Decl. Ex. 3 [Dkt. No. 21-3].)

There is also some dispute about what insurance policies
covered Singleton.  The parties agree that Singleton was covered

3

by an employee group health plan of HLM Holdings, Inc. (the "HLM Plan").  (DSMF ¶ 25; PSMF ¶ 25.)  Defendants submit that Singleton was also covered by an employee group health plan from Hundley CPAS Corporation (the "Hundley Plan"), which Singleton denies.  (DSMF ¶ 25; PSMF ¶ 25.)

Minerley and Singleton both filed civil lawsuits against the respective tortfeasors in their car accidents.  (See FAC ¶ 17; DSMF ¶¶ 15, 24.)[2]  Subsequently, Rawlings contacted both Minerley and Singleton's personal injury attorney claiming it had a right to reimbursement of any eventual recovery made in their respective lawsuits under the terms of their insurance policies.  (DSMF ¶ 19; Kannebecker Decl. [Dkt. No. 24-2] Ex. 1, 3; Van Natta Decl. Ex. 2 [Dkt. No. 22-2].)  As a result of these letters, Minerley fearing negative credit ratings and a potential loss of health insurance authorized payment to Rawlings of $3,512.82 for reimbursement of benefits received.  (DSMF ¶ 20; Minerley Decl. ¶ 9.)  Singleton does not appear to have paid anything to Defendants at this time.  Defendants

---

[2] Minerley in the response to Defendant's Statement of Material Facts denies "that litigation was instituted by Plaintiff Jay Minerley against the alleged tortfeasor."  (PSMF ¶ 15.)  However, that assertion is directly contradicted by the complaint.  (See Compl. ¶ 17.)  While the Court must give Plaintiffs all reasonable inferences, the complaint will control in the event of directly contradictory evidence submitted by Minerley.

assert that they have not asserted subrogation claims against either of Minerley or Singleton's respective tortfeasors. (DSMF ¶ 31.)

On January 25, 2013, Plaintiffs along with a third person – Michelle Roche – filed a complaint against the Defendants in the New Jersey Superior Court, Law Division, Atlantic County. (See Original Compl. [Dkt. No. 1-1].) Defendants removed the action to this Court on March 7, 2013. (See Notice of Removal [Dkt. No. 1].) Before any defendant answered or made a motion for summary judgment, Plaintiffs amended the complaint to remove Roche as a plaintiff from this suit. (See generally FAC.) Plaintiffs complain on behalf of themselves and a putative class of persons similarly situated that the recovery actions taken by Defendants violate New Jersey's anti-subrogation laws – codified at N.J.S.A. 2A:15-97 and N.J.A.C. 11:4-42.10 – as well as the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:88-19, and other common law torts. (See generally FAC.)

Defendants brought the instant motion, and afterwards Plaintiffs filed a motion to consolidate this case with Roche's separately filed action, Civil Action No. 13-3933 (the "Roche Action"). Magistrate Judge Karen Williams denied the motion to consolidate due to a pending motion to remand in the Roche Action. See Order, Dec. 4, 2013 [Dkt. No. 34]. Subsequently,

Judge Joseph H. Rodriguez[3] dismissed without prejudice the
summary judgment motion with the right to reinstate the motion
by letter due to a potential jurisdictional issue in the Roche
Action.  See Order, Mar. 31, 2014 [Dkt. No. 38].

Plaintiffs informed this Court by way of letter on July 2,
2015 that the request for remand in the Roche Action was being
withdrawn, and urged the Court to proceed with the litigation.
(See Ercole Letter [Dkt. No. 39].)  Defendants then requested
the Court reinstate the motion for summary judgment.  (See Cohen
Letter [Dkt. No. 40].)  The motion was subsequently reinstated.

## II.  JURISDICTION

Plaintiffs have brought suit as a representative of a
putative class on issues of New Jersey law.  Plaintiffs
initially filed this suit in the New Jersey Superior Court, Law
Division, and Defendants timely removed to this Court on the
grounds that Plaintiffs' complaint stated a claim under the
Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.
L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §
1001, et seq.).  (See Notice of Removal [Dkt. No. 1].)  As will
explained in Section IV.C, infra, all of Plaintiffs' state law

---

[3] This matter was reassigned from Judge Rodriguez to Judge Joseph
E. Irenas on July 28, 2015.  See Order, July 28, 2015 [Dkt. No.
41].  Judge Irenas unfortunately passed away in October 2015, at
which point this matter was transferred to the undersigned.  See
Order, Oct. 29, 2015 [Dkt. No. 44].

claims are completely preempted by ERISA § 502.[4]  As such, this Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f).[5]

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex, 477 U.S.

---

[4] ERISA presents an exception to the well-pleaded complaint rule that would ordinarily require the complaint to state a federal claim on its face.  See Metro Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).

[5] The Court need not reach the jurisdictional argument based on the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (relevant portion codified at 28 U.S.C. § 1332(d)).

at 322-23.  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 252.  Even if the facts are undisputed, a disagreement over what inferences may be drawn from the facts precludes a grant of summary judgment.  Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Further, the nonmoving party must come forth with affidavits and evidence in support of their position; merely relying on the pleadings and the assertions therein is insufficient to demonstrate a genuine issue of material of fact on a motion for summary judgment.  Celotex, 477 U.S. at 324; see also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).  The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. Anderson, 477 U.S. at 249.

Where the factual record has not yet been developed, as here, plaintiffs are permitted to "show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The declaration "must identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment, and why it has not been previously obtained." Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir. 1989) (internal quotation omitted). Although this motion comes before discovery has been fully pursued, because Defendants have characterized the motion as one for summary judgment, the parties have filed statements and responses pursuant to Local Civil Rule 56.1, and there has been submission by both Plaintiffs and Defendants of materials outside the pleadings, the Court will treat the motion as one for summary judgment. See Hilfirty v. Shipman, 91 F.3d 573, 578–79 (3d Cir. 1996); see also Lunn v. Prudential Ins. Co. of Am., 283 F. App'x 940, 943 (3d Cir. 2008).

**IV.  DISCUSSION**

Defendants move for summary judgment on Plaintiffs' claims under two broad theories:  (1) ERISA preempts all of Plaintiffs' state law claims; (2) it would be futile to amend to restyle Plaintiffs' claims as ERISA claims.  Before going into the

9

merits of the arguments, it is necessary to clarify what parties and what insurance plans are at issue here.

### A.    PARTIES AND APPLICABLE INSURANCE CONTRACTS

The first step is to clarify who the proper plaintiffs are in this matter.  Plaintiffs, in filing their amended complaint dropped all claims of Roche.  (See generally FAC.)  Defendants assert that this was an improper way to remove Roche from the action and seek judgment against Roche in this action.[6]  (See Def.'s Mot. Br. at 27-29; Def's Reply [Dkt. No. 29] at 13-14.)  Plaintiffs argue that this act was sufficient to remove all claims pertaining to Roche.  (Pls.' Opp. at 37-39.)

Defendants are correct that simply amending the complaint to remove a plaintiff is not technically the correct way for a party to withdraw from an action.  The procedures governing dismissal of an action are outlined in Federal Rule of Civil Procedure 41.  At the time Plaintiffs filed the FAC, none of the Defendants had answered or moved for summary judgment.  (See generally ECF Docket Sheet.)  Thus, under the Rules, Plaintiffs could have filed a notice of dismissal to dismiss Roche from the action without consent from the Defendants or the Court.  See Fed. R. Civ. P. 41(a)(1)(A)(i).  Despite Plaintiffs' failure to

---

[6] The Court recently dismissed the Roche Action without prejudice for failure to exhaust administrative remedies.

directly adhere to the Rule, this Court will construe the FAC as
also containing a notice of voluntary dismissal under Rule
41(a)(1)(A)(i).  See Fed. R. Civ. P. 1 ("[The Rules] should be
construed, administered, and employed by the court and the
parties to secure the just, speedy, and inexpensive
determination of every action and proceeding.").  Therefore,
Roche will be deemed dismissed from this action, and the Clerk
will be instructed to revise the case caption accordingly.

Additionally, the parties dispute under what plan Minerley
was covered, and also whether Singleton was covered by the
Hundley Plan, as discussed above.  At this time, the Court is
unable to determine which of the competing plan documents
submitted apply to Minerley, and so cannot make any
determination about the terms of any contract.  The evidence
produced by Defendants to show that Minerley was covered by the
Weiss-Aug HMO are the declaration of Myrna Goodrich, a multi-
functional project manager/litigation paralegal in Aetna's legal
department, (Goodrich Decl. ¶¶ 1-2), and a certificate of
coverage that Defendants claim covers Minerley (Goodrich Ex. 3).
Goodrich asserts that Minerley "received medical service . . .
under the employee group Pennsylvania HMO plan" which Defendants
submitted.  (Goodrich Decl. ¶ 13.)  The first page of the
certificate submitted by defendants at the top states "Aetna
Health Inc. (Pennsylvania)," is titled "Group Agreement Cover

11

Sheet," and says that the governing law is "Federal law and the laws of Pennsylvania." (Goodrich Ex. 3 at PageID 686.)

Minerley submits a different insurance agreement that he claims was given to him by his employer. (Minerley Decl. ¶¶ 5-7; Minerley Ex. 1.) The first page of the document submitted by Minerley states at the top "Corporate Health Insurance Company (New Jersey)," is titled "Group Insurance Policy Cover Sheet," and says the governing law is "Federal law and the laws of New Jersey." (Minerley Ex. 1 at PageID 809.) Otherwise, the two cover sheets refer to the same contract holder, contract holder number, the inclusion of the "Liberty FLEX Benefits Package" and the same notice address for the insurer. (Compare Goodrich Ex. 3 with Minerley Ex. 1.) Plaintiffs additionally deny that the Certificate of Coverage submitted by Defendants is applicable to Minerley. (Pls.' SMF ¶¶ 14, 16-17.)

Defendants do not point to anything that says Minerley is actually covered by the plan they submit, nor do they do anything to clarify the documents submitted by Minerley, other than saying they are "irrelevant." (Def.'s Reply at 8 n.6.) The Court cannot, at this procedural juncture, weigh the evidence submitted and determine the credibility of that evidence to determine which of the competing plans submitted applies to Minerley. See Anderson, 477 U.S. at 249.

12

However, regardless of which of the plans submitted covers Minerley, it is clear by Minerley's own admission that it is an employee sponsored benefits plan. (See Minerley Decl. ¶ 4 ("As part of my employment with Weis[s] Aug Inc., I was provided health insurance as part of my employment in New Jersey.").) This plan provided to him as part of his employment then falls under the ambit of ERISA. See ERISA § 3, 29 U.S.C. § 1002. Thus, to the extent any of Minerley's claims are preempted by ERISA, that can be decided by the Court without knowing exactly which of the competing plan documents submitted applies to Minerley.

With respect to the dispute regarding the Hundley Plan's applicability to Singleton, this Court finds the Hundley Plan to be properly before it. Defendants again rely on Ms. Goodrich, who does not tell the Court anything about any benefits Singleton may have received under the Hundley Plan. Attached to her declaration are excerpts from the Hundley Plan. (Goodrich Ex. 5.)

Plaintiffs do not submit a declaration from Singleton, but specifically dispute that he received any benefits from the Hundley Plan, while at the same time admitting that benefits were received under the HLM Plan. (Pls.' SMF ¶ 25.) However, Plaintiffs in their opposition, without conditioning their argument, discuss the specifics of the Hundley Plan in

13

explaining why Defendants are the proper defendants to be sued (see Pls.' Opp. at 32), why New Jersey law should apply (see id. at 34), and why exhaustion was not required (see id. at 35). Despite the denial in Plaintiffs' Responsive Statement of Material Facts, Plaintiffs' arguments in their opposition put the Hundley Plan properly at issue.

As the laws and regulations in New Jersey regarding anti-subrogation and their genesis are an important issue here, a brief discussion of those laws is necessary before going into the merits of Defendants' theories.

**B.    REGULATION OF SUBROGATION IN NEW JERSEY**

The New Jersey Collateral Source Statute ("NJCSS") provides in relevant part that:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L. 1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable.

N.J.S.A. 2A:15-97.

In 2001, the New Jersey Supreme Court held that the collateral source rule embodied by the NJCSS does not "allow a health insurer, who expends funds on behalf of an insured, to recoup those payments through subrogation or contract reimbursement when the insured recovers judgment against a tortfeasor." Perreira v. Rediger, 169 N.J. 399, 403 (2001). After determining that the statute did not permit subrogation, the court determined that the NJCSS preempted an insurance regulation on the books at the time that permitted subrogation clauses in insurance contracts. Id. at 415–16.

Following Perreira, a group of individuals who had paid money to their insurers demanded under subrogation clauses sued their insurers to get their money back, along with an individual who had not yet paid and was seeking to avoid payment. Levine v. United Healthcare Corp., 402 F.3d 156, 159–60 (3d Cir. 2005). As the Third Circuit noted, as a result of the Perreira decision, "subrogation and reimbursement provisions are no longer permitted in New Jersey health insurance policies." Id. at 160. The court then went on to discuss the NJCSS, finding that it "essentially reverses the common law collateral source doctrine" by deducting the benefits the plaintiff has received from the judgment ex ante. Id. at 164. The Third Circuit ultimately held that the NJCSS was preempted by ERISA in its application to ERISA-covered insurance plans, because the NJCSS

applied to any collateral source, and not only to insurance sources.  Id. at 164-67.

The New Jersey Administrative Code was updated following Perreira but before Levine to reflect the policy of anti-subrogation under the NJCSS.  The code now provides:

> (a)  No policy or certificate providing group health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party.
> (b)  Insurers shall file with the Commissioner no later than December 31, 2002, endorsements that remove any subrogation and third party recovery provisions contained in previously filed contract, policy or certificate forms.

N.J.A.C. 11:4-42.10 ("Section 42.10").

### C.   ERISA PREEMPTION

#### 1.   CLAIMS UNDER THE NJCSS AND SECTION 42.10

As an initial matter, Levine has already held that ERISA preempts any claim under the NJCSS for a covered plan.  See Levine, 402 F.3d at 163-66.  Plaintiffs concede this point, and so any NJCSS claims cannot survive summary judgment.  (See Pls.' Opp. at 11-12.)  However, Plaintiffs argue that even if the NJCSS claims are expressly preempted, their claims under the applicable New Jersey Administrative Code section, Section 42.10, are saved from preemption under ERISA § 514[7] and may

---

[7] ERISA § 514(a), 29 U.S.C. § 1144(a) provides that "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall

proceed.  (<u>See</u> Pls.' Opp. at 10-15.)  Defendants submit that

Section 42.10 is completely preempted[8] by ERISA § 502, which

renders any saving under ERISA § 514(b)(2)(A) irrelevant.[9]  (<u>See</u>

Defs.' Mot. Br. at 15-21, 25; Defs.' Reply at 2-7.)  Both

Plaintiffs and Defendants appear to misunderstand the interplay

between the exclusive remedy provided by ERISA § 502 and the

express preemption provision and attendant saving clause of

ERISA § 514.  As will be explained, the claims under Section

42.10 are conflict preempted by ERISA § 502(a) as claims for

benefits due, but Section 42.10 itself is saved from preemption

under ERISA § 514(b)(2)(A) as a law regulating insurance, and so

---

supersede any and all State laws insofar as they may now or
hereafter relate to any [ERISA-covered] employee benefit plan .
. . . ."  ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), then
states in relevant part, "[N]othing in this subchapter shall be
construed to exempt or relieve any person from any law of any
State which regulates insurance, banking, or securities."

[8] "Complete preemption is a 'jurisdictional concept,' not a
substantive concept governing which law is applicable, like
express or conflict preemption."  <u>Menkes v. Prudential Ins. Co.
of Am.</u>, 762 F.3d 285, 294 n.6 (3d Cir. 2014) (citing <u>In re U.S.
Healthcare, Inc.</u>, 193 F.3d 51, 160 (3d Cir. 1999)).  With
respect to whether the state law claims should be claims under
ERISA § 502, and thus federal claims, that is an issue of
complete preemption.  But whether NJCSS and Section 42.10 can
provide guidance as to those claims under ERISA § 502 is an
issue of express preemption under ERISA § 514.

[9] ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides "A
civil action may be brought by a participant or beneficiary to
recover benefits due to him under the terms of his plan, to
enforce his rights under the terms of the plan, or to clarify
his rights to future benefits under the terms of the plan."

provides the relevant rule of decision for determining what benefits are due under a claim properly pleaded under ERISA § 502(a).

ERISA has not been lauded as an artfully drafted statute, especially in the area of preemption.  See, e.g., Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 364–65 (2002) ("The 'unhelpful' drafting of these antiphonal clauses occupies a substantial share of this Court's time."), overruled in part by Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003); Metro. Life Ins. v. Massachusetts, 471 U.S. 724, 739 (1985) ("The two pre-emption sections . . . perhaps are not a model of legislative drafting . . . .")  The Supreme Court has explained:

> ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a).  Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as "regulating insurance" will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

Aetna Health Inc. v. Davila, 542 U.S. 200, 217–18 (2004).

However, preemption of a claim does not mean preemption of an entire theory of suit.  A state law claim may be preempted, but if the claim is under a law or regulation that is saved under ERISA § 514(b)(2)(A), then that law or regulation can "suppl[y] the relevant rule of decision for [an ERISA] § 502(a) suit" so long as it is not providing relief above and beyond

what ERISA § 502 would provide.  UNUM Life Ins. Co. of Am. v.

Ward, 526 U.S. 358, 377 (1999); accord Menkes, 762 F.3d at 296 &

n.11 (remarking that when the state law claim is preempted, the

remedy sought may still be available under ERISA § 502(a)).  If

a claim under Section 42.10 falls within the ambit of ERISA

§ 502(a), but Section 42.10 itself is saved from express

preemption under ERISA § 514(b)(2)(A), then Section 42.10 will

provide the "relevant rule of decision" for the suit to proceed

under ERISA § 502(a).

As the Third Circuit has determined, claims for return of

subrogation payments or to avoid payment of subrogation liens

are claims for "benefits due" under ERISA § 502(a).  Levine, 402

F.3d at 163.[10]  Clearly, the claims under Section 42.10 are then

---

[10] The Second Circuit has expressly disagreed with this holding
of Levine.  See Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 243-44
(2d Cir. 2014).  The court in Wurtz believed that the Supreme
Court's test in Davila for determining complete preemption under
ERISA § 502(a) mandates that claims under state anti-subrogation
laws are not the type of claim that could be brought under ERISA
§ 502(a)(1)(B).  Id. at 241-43.  Plaintiffs urge this Court to
follow the reasoning of Wurtz rather than the decision in
Levine.  (See Ercole Letter [Dkt. No. 39] at 2.)  This Court
cannot.  The Third Circuit has specifically reaffirmed its
holding from Levine when invited to depart from it.  See Wirth
v. Aetna U.S. Healthcare, 469 F.3d 305, 308-309 (3d Cir. 2006)
("The force of Levine's reasoning has not diminished.").  Unless
the Third Circuit determines to overrule its earlier ruling in
Levine or is overruled by the Supreme Court, the law of this
circuit is that claims under anti-subrogation laws are claims
for "benefits due" under ERISA § 502(a)(1)(B).  The decision of
the Supreme Court to deny a petition for writ of certiorari from
defendants in Wurtz is irrelevant to this analysis.

claims for "benefits due" under ERISA § 502(a), and so the state law claims are preempted.  The issue then becomes whether Section 42.10 has been expressly preempted under ERISA § 514. In Levine, the Third Circuit found that ERISA § 514 expressly preempted the NJCSS itself, and then found that the contractual provisions within the plaintiffs' insurance policies permitting for reimbursement and subrogation were permissible.  Id. at 163–66.  The court in Levine noted the existence of Section 42.10, but did not opine on whether Section 42.10 would be expressly preempted under ERISA § 514.  Id. at 159 n.2.  Thus, the issue is an open question and one of first impression.

However, Defendants submit that they are not arguing Section 42.10 is expressly preempted.  (Defs.' Reply at 4 n.4 ("Defendants argued only that the other New Jersey statute at issue, [the NJCSS], is expressly preempted by ERISA § 514 . . . .").)  Plaintiffs argue that Section 42.10 is saved from express preemption under ERISA § 512(b)(2)(A).  (Pls.' Opp. at 9–11.) It thus appears to the Court that the parties are in agreement that Section 42.10 is not expressly preempted under ERISA § 514.[11]  The subrogation prohibition contained with Section

---

[11] This Court would agree that Section 42.10 is not expressly preempted applying the two-factor test from Miller, 528 U.S. at 341–42, that for a state law to be saved under ERISA § 514(b)(2)(A), it must (1) be "specifically directed toward entities engaged in insurance;" and (2) "substantially affect the risk pooling arrangement between the insurer and the

42.10 therefore "supplies the relevant rule of decision" for any ERISA § 502(a) claim.  See UNUM Life Ins. Co., 526 U.S. at 377.

In light of the preemption of claims of violation of the NJCSS and Section 42.10 by ERISA § 502(a), claims on behalf of Plaintiffs must be dismissed, and leave provided to Minerley only[12] to re-plead his causes of action properly under ERISA § 502(a).  See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc., Civ. No. 06-0462 (JAG), 2006 WL 3751385, at *2 (D.N.J. Dec. 19, 2006) ("While this Court has the ability to recharacterize a plaintiff's claims when determining if it has removal jurisdiction, it is not required to rewrite the plaintiff's complaint.").  If Minerley decides to replead these claims, Section 42.10 may supply the relevant rule of

_____

insured."  Section 42.10 was promulgated by the New Jersey Department of Banking and Insurance and contained in the title of the New Jersey Administrative Code pertaining to insurance, making it specifically directed toward entities engaged in insurance.  See Section 42.10; see also Rule Proposal, 34 N.J.R. 647(a) (Feb. 4, 2002); Rule Adoption, 34 N.J.R. 2798(a) (Aug. 5, 2002).  Section 42.10 was also enacted in light of a desire to shift the burden for tort recovery from liability insurers to health insurers, after the New Jersey Supreme Court found that the NJCSS invalidated the original version of Section 42.10 that permitted subrogation.  See Perreira, 169 N.J. at 411 (discussing how the NJCSS was passed in order to favor liability insurers rather than health insurers in tort recovery); Rule Proposal, 34 N.J.R. 647(a) (Feb. 4, 2002) (discussing the favorable economic impact of the regulation on insureds and the indirect unfavorable economic impact on insurers).

[12] Singleton's claims would still fail if re-pleaded as claims under ERISA § 502(a) as discussed in Section IV.D.2, infra.

decision for the ERISA § 502(a) claim as it has been saved from express preemption under ERISA § 514(b)(2)(A), but the NJCSS may not, as it has been ruled to be expressly preempted by ERISA § 514.[13]

###  2.   OTHER STATE LAW CLAIMS

Turning to the remainder of Plaintiffs' state law claims, they are broadly (1) claims for violation of the NJCFA and misrepresentation; (2) claims for breach of contract and breaches of various duties related to entering into contracts; and (3) claims for theft or attempted theft as well as conversion and unjust enrichment.[14]  As this Court has already recognized, challenging the decision of the insurer to seek subrogation is a claim for "benefits due" under ERISA § 502(a), and so the claim must be preempted.  All of these claims therefore are also preempted because they are all based on the idea that the Defendants committed these torts by seeking subrogation payments; they are merely different theories by

---

[13] This does not express an opinion on Defendants' argument made in their reply brief that Section 42.10 is inapplicable to Minerley entirely because his benefits were received under a Pennsylvania plan.  (See Defs.' Reply at 10-11.)  Because of the genuine dispute about which plan covered Minerley, this Court will not rule on this conflict of laws issue raised in the reply brief at this juncture.

[14] These claims are also pleaded on behalf of a proposed class.  (See FAC Counts XXI-XXXIII.)

which Plaintiffs seek recovery for the same conduct.  None of
these provisions can be saved by ERISA § 514(b)(2)(A) as none
are targeted to the insurance industry, and so cannot supply the
relevant rule of decision.  Thus, the remaining state law claims
must be dismissed.

### D.   FUTILITY OF AMENDMENT

#### 1.   MINERLEY

Defendants argue that permitting Minerley to replead claims
under ERISA § 502(a) would be futile because (1) they would
conflict with the express language of his plan's reimbursement
terms; (2) they are asserted against the wrong Defendants; (3)
he has failed to exhaust; and (4) his claims are barred under
the voluntary payment doctrine.  (Defs.' Mot. at 21-25.)  Each
of the Defendants' first three arguments for why Minerley's
amendments would be futile require the Court to assess the
language of the plan.  However, as explained above, due to the
dispute between the parties about what plan documents submitted
into the record actually cover Minerley, this Court cannot make
any determinations based on what the plan language is.
Accordingly, Defendants' Motion will be denied with respect to
these theories due to the presence of a dispute of material
fact.

With respect to the voluntary payment doctrine, this does
not require assessment of the plan language, and so the Court
will address it.  The voluntary payment doctrine is an equitable
doctrine providing "where a party, without mistake of fact, or
fraud, duress or extortion, voluntarily pays money on a demand
which is not [enforceable] against him, he cannot recover it
back."  Simonson v. Hertz Corp., Civ. No. 10-1585 (NLH/KMW),
2011 WL 1205584, at *3 (D.N.J. Mar. 28, 2011) (quoting In re
N.J. State Bd. of Dentistry, 84 N.J. 582, 588 (1980)).  "Since
the [voluntary payment doctrine] is equitable in nature,
'factual as well as legal disputes' are for the Court, and not
the jury, to decide."  Boyko v. Am. Int'l Grp., Inc., Civ. No.
08-2214 (RBK/JS), 2012 WL 1495372, at *13 (D.N.J. Apr. 26,
2012), order vacated in part on reconsideration, 2012 WL 2132390
(D.N.J. June 12, 2012).  In Boyko, the court determined that
even where a plaintiff had the advice of counsel and was aware
that he did not owe money, being fearful of consequences of
nonpayment "including unwanted debt-collections communications
and potential reporting to credit ratings agencies" was
sufficient to constitute duress.  Id. at *14.

Here, Minerley has submitted a declaration indicating he
"authorized payment to Rawlings of the lien it claimed because
of the letters Rawlings had sent and [he] could not risk
negative credit ratings or the potential loss of health

24

insurance coverage." (Minerly Decl. ¶ 9.) Defendants argue
that this is insufficient and is not a "cogent argument
connecting these Defendants and his imagined consequences."
(Defs.' Reply at 12.) The Court disagrees with Defendants and
finds that Minerley's declaration combined with the letters from
Rawlings are sufficient evidence to prove that Minerley had a
real fear of loss of insurance. Accordingly, the Court agrees
with the reasoning of <u>Boyko</u> and finds the voluntary payment
doctrine inapplicable here. The Defendants' Motion will be
denied on this issue as a matter of law.

### 2.   SINGLETON

For Singleton, Defendants also argue that permitting
Singleton to replead his claims as ERISA § 502(a) claims would
be futile. They argue that (1) Singleton sued the wrong
defendants; (2) Singleton's plans do not prohibit subrogation;
(3) Singleton failed to exhaust; and (4) Pennsylvania law and
not New Jersey law applied to Singleton's suit. For the reasons
that follow, this Court finds that the exhaustion argument is
dispositive, and will agree with Defendants that Singleton's
claims must be dismissed for failure to exhaust.

Defendants submit that Singleton was required to exhaust,
and that his failure to do so renders him unable to seek
recourse before this Court. (Defs.' Mot. at 23–24, 26.)

Singleton argues that he did not need to exhaust administrative remedies because his claims arose only from an issue of law and not an adverse benefits determination.  (Pls.' Opp. at 35-36.) He also argues that even if he did need to exhaust, it would have been futile for him to do so.  (Id. at 36-37.)

"Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990)) (omission in original).  However, "[a] plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so."  Id. (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)).

As to Singleton's first argument, that his claims are not subject to the exhaustion requirement, this Court disagrees. Under both plans, an internal appeal is required when seeking to have the plan "reconsider an adverse benefit determination." (HLM Plan (Goodrich Ex. 4) at 34; Hundley Plan (Goodrich Ex. 5) at 34.)  As explained above in Section IV.C.1, supra, claims seeking to avoid paying a subrogation lien are in fact claims for "benefits due" in this circuit.  See also Wirth, 469 F.3d at 309 (reaffirming the decision in Levine and finding that Levine foreclosed any argument that seeking recovery of a payment made

to extinguish a lien is not an action for "benefits due").

Further, the Third Circuit has recently held in a non-

precedential opinion that the decisions in <u>Levine</u> and <u>Wirth</u> that

claims regarding subrogation liens are claims for "benefits due"

mean that such claims are subject to exhaustion.  <u>Mallon v.</u>

<u>Trover Sols. Inc.</u>, 613 F. App'x 142, 144 (3d Cir. 2015).  Both

plans also specifically advise that the internal administrative

review processes must be exhausted before recourse is made to

any litigation, except in a few circumstances which Singleton

does not argue are applicable to him.  (<u>See</u> HLM Plan at 35-36;

Hundley Plan at 35-36.)  Therefore, this type of claim is

seeking reconsideration of an adverse benefit determination, and

the terms of both plans squarely require Singleton to pursue an

administrative remedy.

With respect to Singleton's futility argument, this Court

also disagrees.  "Whether to excuse exhaustion on futility

grounds rests upon weighing several factors, including:  (1)

whether plaintiff diligently pursued administrative relief; (2)

whether plaintiff acted reasonable in seeking immediate judicial

review under the circumstances; (3) existence of a fixed policy

denying benefits; (4) failure of the insurance company to comply

with its own internal administrative procedures; and (5)

testimony of plan administrators that any administrative appeal

was futile." Harrow, 279 F.3d at 250.[15]  Singleton submits that
the letters from Rawlings "made it clear that their position
with regard to the validity of the asserted
subrogation/reimbursement demand would not change" and that
"Defendants had a fixed, rigid and global policy in place with
regard to this issue." (Pls.' Opp. at 36.)  This Court cannot
agree that on the basis of those letters alone Singleton has
successfully shown any administrative appeal would have been
futile.  Accordingly, the Court will grant Defendants' Motion
with respect to Singleton's claims, but Singleton will be
permitted to refile if he successfully pursues administrative
remedies and still does not obtain his desired outcome, as
Singleton requests in the alternative.

**V.   CONCLUSION**

For the foregoing reasons, Defendant's Motion will be
granted-in-part on the grounds that all of Plaintiffs' claims
are preempted by ERISA § 502(a) and leave is provided to
Minerley only to amend the complaint within thirty (30) days to
state a claim under ERISA § 502(a).  Only Section 42.10 is saved

---

[15] Plaintiffs also argue in a footnote that New Jersey's law on
exhaustion is relevant. (See Pls.' Opp. at 26 n.11.)  Because
this Court has already determined that the claims must be styled
as claims under ERISA § 502(a), New Jersey's law on exhaustion
plays no part in the exhaustion analysis.

from express preemption under ERISA § 514(b)(2)(A), and only Section 42.10 can supply the relevant rule of decision for a claim under ERISA § 502(a) should Minerley choose to amend the complaint.

Defendants' Motion will also be granted-in-part on the grounds that Singleton's claims, even if amended to be ERISA § 502(a) claims, would fail due to Singleton's failure to exhaust. Singleton's claims, therefore, are dismissed without prejudice to his ability to file a new complaint if the internal administrative remedies do not provide him with the outcome he desires.

Defendants' Motion will be denied-in-part on the grounds that Minerley's claims are not barred by the voluntary payment doctrine. Defendants' Motion is otherwise denied with respect to Minerley's claims due to the genuine dispute of material fact about which plan documents covered Minerley.

Finally, the Clerk will be instructed to revise the caption of the case accordingly to reflect that only Jay Minerley remains as a plaintiff in this matter to avoid confusion between this matter and the Roche Action, Civ. No. 13-3933.

An appropriate order accompanies this opinion.


Date:   __March 1st__ , 2016
At Camden, New Jersey

                              s/ Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.