# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAY MINERLEY, individually
and as class representative,

        Plaintiff,

  v.

AETNA, INC., AETNA HEALTH,
INC. (a NJ corp.), AETNA
HEALTH INSURANCE CO., AETNA
LIFE INSURANCE CO., and THE
RAWLINGS COMPANY, LLC,

        Defendants.

CIVIL NO. 13-1377 (NLH/KMW)

**OPINION**

<u>**APPEARANCES**</u>:

CHARLES KANNEBECKER
KANNEBECKER LAW
104 W. HIGH STREET
MILFORD, PA 18337

AND

RYAN N. BOLAND
MATTHEW D'ANNUNZIO
DON P. FOSTER
OFFIT KURMAN, P.A.
1801 MARKET STREET, SUITE 2300
PHILADELPHIA, PA 19103

    *Attorneys for Plaintiff, Jay Minerley*

ANTHONY M. CHRISTINA
RICHARD W. COHEN
GERALD LAWRENCE
URIEL RABINOVITZ
LOWEY DANNENBERG, P.C.
44 SOUTH BROADWAY, SUITE 1100
WHITE PLAINS, NY 10601-2310

*Attorneys for Defendants Aetna, Inc., Aetna Health, Inc. (a NJ corp.), Aetna Health Insurance Co., Aetna Life Insurance Co., and the Rawlings Company, LLC*

**HILLMAN**, District Judge

This case concerns the interpretation of an insurance policy and whether the insurer may require the insured to reimburse medical costs paid by the insurer when the insured receives an award from a third-party tortfeasor. Currently before the Court is Plaintiff's Motion for Partial Summary Judgment and Defendants'[1] Motion for Summary Judgment. For the reasons discussed below, Plaintiff's Motion will be denied and Defendants' Motion will be granted, in part, and denied, in part.

**BACKGROUND**

Our recitation of the facts is taken from Plaintiff's and Defendants' Statements of Material Facts Not in Dispute. This Court notes factual disagreement where applicable. Plaintiff Jay Minerley was an employee of Weiss-Aug Company Inc. ("Weiss-Aug"), a New Jersey company, from February 2007 through April 2017. During that time, Minerley, a resident of Pennsylvania, enrolled in an employer-sponsored health benefits provided by Weiss-Aug. Of relevance, Minerley attended a Weiss-Aug employee

---

[1] As used in this Opinion, "Defendants" refers to Aetna, Inc., Aetna Health, Inc. (a NJ corp.), Aetna Health Insurance Co., Aetna Life Insurance Co., and the Rawlings Company, LLC.

benefits meeting on October 27, 2009 and received a plan design document, which provided a top-level overview of the benefits offered.

Minerley participated in the Weiss-Aug sponsored healthcare benefits plan (the "Weiss-Aug Plan" or the "ERISA Plan"). Debra Myshkoff was the plan administrator for the Weiss-Aug Plan. Weiss-Aug received copies of the relevant policies provided by Aetna. It is unclear whether Myshkoff provided copies of the policies at the meeting, but it is undisputed that Minerley had access to plan documents through an electronic portal provided by Aetna.

As part of the Weiss-Aug Plan, Minerley received benefits under an Aetna Citizen Choice Point of Service HMO Plan (the "Aetna insurance policies" or the "Aetna policies"). Minerley's insurance benefits consisted of two policies: the Pennsylvania HMO policy (the "Aetna PA Policy"), underwritten by Aetna Health Inc., and the New Jersey Non-Referred policy (the "Aetna NJ Policy"), underwritten by the Aetna Health Insurance Company. The Aetna PA Policy provided in-network benefits and emergency services while the Aetna NJ Policy provided out-of-network and non-referred medical services.

Each of these policies contained two overall documents. The first document was an agreement between Weiss-Aug and the underwriting Aetna entity. The second document was a

Certificate of Coverage ("Certificate"). Within this Certificate is a section pertaining to the underwriting Aetna entities' right of recovery against an insured in specific situations. In relevant part, the Aetna PA Policy's Certificate stated:

> The **Member** also specifically acknowledges **HMO's** right of reimbursement. This right of reimbursement attaches, to the fullest extent permitted by law, when **HMO** has provided health care benefits for injuries or illness for which a third party is and the **Member** and/or the **Member's** representative has recovered any amounts from the third party or any party making payments on the third party's behalf. By providing any benefit under this **Certificate**, **HMO** is granted an assignment of the proceeds of any settlement, judgment or other payment received by the **Member** to the extent of the full cost of all benefits provided by **HMO**.

(emphasis in original). This was amended effective November 1, 2009, to state:

> By accepting benefits under this Plan, the **Member** also specifically acknowledges **HMO**'s right of reimbursement. This right of reimbursement attaches when this Plan has provided health care benefits for expenses incurred due to Third Party injuries and the **Member** or the **Member's** representative has recovered any amounts from any sources, including but not limited to: payments made by a third Party or any insurance company on behalf of the Third Party . . . .

(emphasis in original).[2]

There are two processes for administrative exhaustion under the Aetna PA Policy, the "appeal" process and the "complaint"

---

[2] While Plaintiff denies Defendants' characterization of this policy provision, Plaintiff does not deny that the policy contains this provision.

process.  The appeal process is used for "adverse benefit determinations."  An adverse benefit determination includes "decisions made by the **HMO** that result in denial, reduction or termination of a benefit or the amount paid for it." (emphasis in original).  An appeal occurs when there is a "request to the **HMO** to reconsider an adverse benefit determination." (emphasis in original).

The complaint process starts with a "complaint."  A "complaint" is "an expression of dissatisfaction about . . . the quality of coverage, operations or management policies of the **HMO**." (emphasis in original).  There are procedures, which are not relevant to the issue at hand, that the Aetna PA Policy prescribes for Aetna to follow when reviewing a "complaint."  Although both an "appeal" and a "complaint" under the Aetna PA Policy are subject to different procedures, both are subject to an exhaustion of process provision.  This "must be exhausted prior to . . . the establishing of any litigation."

Myshkoff, the ERISA Employee Retirement Income Security Act ("ERISA") plan administrator for Weiss-Aug, stated that the Aetna PA Policy was the relevant ERISA plan document for the time period at issue.[3]  Weiss-Aug submitted a single Form 5500

---

[3] Plaintiff alleges that counsel spoke with Myshkoff and advised her that the Aetna PA Policy was the relevant plan document. Regardless of Plaintiff's unsubstantiated allegation, Defendants are correct that Myshkoff declared, under penalty of perjury,

for the year 2010, received one plan identification number, 502, and identified through various schedules that Aetna Health, Inc., Sun Life and Health Insurance Company, and Unum Life Insurance Company of America would provide benefits.

On May 20, 2010, Minerley was involved in a motor vehicle accident in Morris County, New Jersey. He sustained multiple injuries, including fractured ribs, fractured vertebrae, and herniated disks. He was treated at St. Clare's Hospital and Morristown Memorial Hospital. Minerley's medical treatments totaled $3,512.82 and were paid for by his Aetna PA Policy.[4]

Minerley retained a personal injury attorney, Charles Kannebecker. Defendant Rawlings, which was Aetna's subrogation and reimbursement claims vendor at the time, notified Kannebecker on July 21, 2010 of the Aetna PA Policy's reimbursement provision discussed supra. Minerley later successfully recovered from the third-party tortfeasor in this accident. On January 9, 2013, Rawlings received a reimbursement check from Kannebecker, sent on Minerley's behalf, in the amount of $3,512.82 — the exact amount of the health benefits provided.

---

that the Aetna PA Policy was the relevant plan document at the time of Minerley's accident. This is further supported by her deposition testimony, where she states the same.

[4] Again, Plaintiff denies Defendants' characterization of these facts, but admits that "Defendants produced records suggesting that the benefits were paid through the" Aetna PA Policy.

Minerley did not contest this policy provision through the administrative procedures set forth in the Aetna PA Policy (or the Aetna NJ Policy) as described supra. Minerley claims he did not do so because he never received a "Notice of Adverse Benefit Determination." Defendants do not contest that Minerley did not receive a document with that title, but do state that the July 21, 2010 letter from Rawlings and their own filings in this case serve as notice of their adverse benefit determination. Instead of pursuing his administrative remedies, Minerley, along with Michelle Roche and Tim Singleton, filed a complaint against Defendants in the New Jersey Superior Court, Law Division, Atlantic County. Defendants removed the action to this Court on March 7, 2013. Multiple opinions, motion practice, and discovery ensued.

Currently, Minerley is the only Plaintiff in this case. Singleton's claims were dismissed on March 1, 2016 [45, 46]. Minerley, through his amended complaint, now claims the following:

- Aetna violated 29 U.S.C. § 1132(a)(1)(B) by denying benefits to which Minerley was entitled; and

- Aetna violated 29 U.S. § 1004(a)(1)(A) and 29 U.S.C. § 1132(a)(3) (concerning breaches of fiduciary duty) by requiring reimbursement of Minerley's tort claim, for allegedly misrepresenting its right to reimbursement, and

by failing to avoid the alleged conflict of interest in
demanding reimbursement.

All parties filed their respective summary judgment motions on
February 9, 2018.  These motions were fully briefed and are now
ripe for adjudication.

## ANALYSIS

### A.   Subject Matter Jurisdiction

This Court exercises jurisdiction pursuant to 28 U.S.C. §
1331 and 29 U.S.C. § 1132(f).

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits if any,' . . . demonstrate the absence of a genuine
issue of material fact" and that the moving party is entitled to
a judgment as a matter of law.  Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  "In considering a motion for summary
judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence 'is to be believed and
all justifiable inferences are to be drawn in his favor.'"
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment
always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying
those portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact."); see Singletary v. Pa.
Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by "showing"—that is, pointing
out to the district court—that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof." (citing Celotex, 477 U.S.
at 325)).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts

showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

If this case proceeds to trial, the remaining issues will be tried before this Court in a bench trial. "When deciding a motion for summary judgment, it is not our role to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial." Rubin v. Amerihealth Adm'rs, Inc., No. 12-3719, 2013 WL 3967569, at *8 (E.D. Pa. Aug. 2, 2013) (citing Anderson, 477 U.S. at 249). "A judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury." Id. (quoting Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, No. 12-3719, 2012 WL 122362, at *4 (D. Md.

Jan. 12, 2012)). But see Chao v. Local 54, Hotel Emps. & Rest. Emps. Int'l Union, 166 F. Supp. 2d 109, 116 (D.N.J. 2001) ("While questions of 'reasonableness' involve a primarily factual inquiry, in a non-jury case, where the material evidentiary facts relating to the issue of 'reasonableness' have been fully developed in the record and are undisputed, the Court may appropriately grant summary judgment if a bench trial would not enhance its ability to draw inferences and conclusions." (citing Coats & Clark, Inc. v. Gay, 755 F.2d 1506, 1509-10 (11th Cir. 1985); Nunez v. Superior Oil Co., 572 F.2d 1119, 1123-24 (5th Cir. 1978))); Coleman v. Mfrs. Hanover Corp., No. 89-1249, 1990 WL 27370, at *5 n.4 (E.D. Pa. Mar. 14, 1990) ("To the extent that the court must draw inferences from the undisputed evidentiary facts to determine whether there has been prohibited discrimination, the court in a nonjury case is entitled to draw such inferences and conclusions on motions for summary judgment if a bench trial would not enhance its ability to draw those inferences and conclusions." (citing Coats & Clark, 755 F.2d at 1509-10; Nunez, 572 F.2d at 1123-24; Phillips v. Amoco Oil Co., 614 F. Supp. 694, 723 n.35 (D. Ala. 1985), aff'd, 799 F.2d 1164 (11th Cir. 1986))).

## C. Weiss-Aug's ERISA Plan

The Court will address the arguments by both sides concerning whether the Aetna PA Policy may properly be

considered an ERISA plan document.  These arguments were briefed in both Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment.  This Court has considered the parties' respective positions and holds that the Aetna PA Policy is an ERISA plan document under the Weiss-Aug Plan and may properly control the rights and obligations of the parties in this case.

By way of background, ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purposes of providing for its participants or their beneficiaries, through insurance or otherwise

certain benefits.  29 U.S.C. § 1002(1).[5]  This plan must be "established and maintained pursuant to a written instrument."

Plaintiff essentially argues that an insurance policy may not serve as an ERISA plan document, while Defendant argues that they may.  Plaintiff relies on the ERISA statute and corresponding regulations and case law.

---

[5] In Section VI of Plaintiff's Motion for Partial Summary Judgment, Plaintiff argues that an insurance policy cannot be an ERISA plan as defined supra.  As described in the case law infra, multiple insurance policies can be the "written instrument" evidencing an ERISA plan.  There is a difference between an ERISA plan, which is comprised of all the insurance policies here, and an ERISA plan document, which are the Aetna insurance policies here.

### a. The Contents of the Weiss-Aug ERISA Plan Document

Plaintiff's first argument centers on Weiss Aug's Form 5500. Before analyzing the arguments, additional context is appropriate. Form 5500 is a document submitted by an ERISA plan administrator to the Internal Revenue Service ("IRS"), which, in turn, provides copies to the Department of Labor ("DOL"). Form 5500, also referred to as the "annual report" generally shows financial information concerning an employer-sponsored benefit plan. See 29 U.S.C. § 1023.

When an employer-sponsored benefit plan contains any benefits "purchased from and guaranteed by an insurance company, insurance service, or other similar organization" then a Schedule A must be attached for every defined benefit plan. 29 U.S.C. § 1023(e). In fact, Schedule A itself instructs the filer to "[p]rovide information for each contract on a separate Schedule A."

In this case, Weiss-Aug filed a Form 5500 in 2010 for a plan entitled "Weiss-Aug Co., Inc. Employee Health Care Plan." The Form 5500 contained four Schedule A's corresponding to the benefits provided under the plan through insurance companies. The first Schedule A discloses that "Aetna Health, Inc." provides health and prescription drug benefits pursuant to an HMO contract.

Plaintiff's argument is that the Form 5500 shows that Weiss-Aug's ERISA Plan, which controls the rights and obligations of Plaintiff, is different than the Aetna PA Policy. Plaintiff contends that because Form 5500 states the name of the ERISA plan as the "Weiss-Aug Co., Inc. Employee Health Care Plan," but the name of the overall health insurance policy is "Aetna Choice POS Liberty Flex Benefits Package" the Aetna PA Policy cannot control Plaintiff's rights and obligations. The obvious consequence is that Minerley is no longer required to reimburse Aetna from his third-party award.[6] Plaintiff cites no part of the ERISA statute or corresponding regulations, nor any case law in support of this contention.

Defendants counter by essentially arguing that the insurance policies, as a group, are the Weiss-Aug benefits plan.[7] Defendants cite to a long string of decisional law in multiple circuits as evidence that this is appropriate under ERISA and

---

[6] Plaintiff does not provide any insight into whether this argument would require the Court to find that Plaintiff was not entitled to any benefits under the plan.

[7] Plaintiff's reply brief admits that insurance policies may constitute ERISA plan documents. Plaintiff then attempts to distinguish the cases discussed infra. While the facts in each case may differ from the present facts, Plaintiff has not rebutted the central premise encapsulated by each of these cases: an insurance policy may be a "written instrument" meaning it may serve as one of the documents comprising an ERISA plan.

assert that no part of the ERISA statute or its animating regulations deem this procedure a violation.

This Court adopts the case law presented by Defendants, and finds that insurance policies may serve as both ERISA plan documents and as plan assets.[8] "[A]n insurance policy may constitute the 'written instrument' of an ERISA plan." Cinelli v. Sec. Pac. Corp., 61 F.3d 1437, 1441 (9th Cir. 1995). See also Frazier v. Life Ins. Co. of N. Am., 725 F.3d 560, 566 (6th Cir. 2013) ("[T]here appears to be no reason [under ERISA] why an insurance policy cannot be both a plan document and asset."); Gable v. Sweetheart Cup Co., 35 F.3d 851, 856 (4th Cir. 1994) ("An insurance policy may constitute the 'written instrument' of an ERISA plan . . . .").

For the Aetna insurance policies to serve as both plan assets and plan documents, however, they must still be a

---

[8] This Court also rejects the argument made by Plaintiff in Section III of its Motion for Partial Summary Judgment. There, Plaintiff argues that if Aetna's insurance policies are considered ERISA plan documents, then all the other insurance Weiss-Aug procured for its employees are also plan documents. Plaintiff asserts that there can be only one ERISA plan document. That is not true. Tetreault v. Reliance Std. Life Ins. Co., 769 F.3d 49, 55 (1st Cir. 2014) ("ERISA certainly permits more than one document to make up a benefit plan's required written instrument."). Accord Huffman v. Prudential Ins. Co. of Am., No. 2:10-cv-05135, 2018 U.S. Dist. LEXIS 13665, at *11–12 (E.D. Pa. Jan. 29, 2018) ("[I]n many cases a series of documents together comprise the plan, because 'ERISA certainly permits more than one document to make up a benefit plan's required written instrument.'" (quoting Tetreault, 769 F.3d at 55)).

"written instrument."  A document may serve as an ERISA plan
document if, "from the surrounding circumstances a reasonable
person can ascertain the intended benefits, a class of
beneficiaries, the source of financing, and procedures for
receiving benefits."  Menkes v. Prudential Ins. Co. of Am., 762
F.3d 285, 190 (3d Cir. 2014).  The Aetna policies contain
information on the intended benefits (generally, health
insurance), the class of beneficiaries (employees at Weiss-Aug),
the source of financing (premiums paid by Weiss-Aug and its
employees), and the procedures for receiving benefits.

Plaintiff presents a few more arguments on this point in
its reply brief.  First, Plaintiff continues to strenuously
argue that there is a single ERISA plan document and that it
cannot be Aetna's insurance policies.[9]  Second, Plaintiff argues
that Weiss-Aug never possessed the Aetna PA Policy and never
disseminated it until four years after the instant litigation
began.  Third, Plaintiff argues that the summary document

---

[9] Plaintiff also argues in Section XI of its Motion for Partial
Summary Judgment that the 2015 creation and dissemination by
Weiss-Aug of a new Weiss-Aug Co. Inc. Employee Benefits Plan is
evidence that there was not an ERISA plan in place in 2010.
What Weiss-Aug may or may not have done in 2015 is irrelevant to
the events at issue here.  Further, the fact that Plaintiff
believes this is a proper ERISA plan, even though it
"incorporates the component insurance policies" into the plan —
a so-called "wrap" document — is contradictory of many of
Plaintiffs arguments that an insurance policy cannot also be an
ERISA plan document.

distributed at the meeting was the only plan document, and it cannot control.

As to the first argument, Plaintiff provides no factual support.  It has spent five years litigating this case and has failed to uncover a single document that Weiss-Aug created that is the so-called "ERISA Master Plan."  Just because Weiss-Aug gave its plan a name on a Form 5500 does not raise a genuine issue of material fact that Weiss-Aug created some sort of master plan.  In fact, Myshkoff's testimony states otherwise.  Weiss-Aug used the insurance policies it purchased to serve as ERISA plan documents.

As to the second argument, Plaintiff again provides no factual support.  Defendants have produced a March 4, 2010 letter showing that the Aetna PA Policy was sent to Mary Dante at Weiss-Aug.  Whether Myshkoff remembers receiving the policy at that time is irrelevant, as there is clear documentary evidence stating Weiss-Aug did receive it.

As to the third argument, Plaintiff is without either factual or legal support.  It is irrelevant whether a plan design document was distributed to Weiss-Aug employees at the October 27, 2009 meeting, because Plaintiff argues that summary documents create no legal rights or obligations not within the plan documents.  Cigna Corp. v. Amara, 563 U.S. 421, 438 (2011) ("[W]e conclude that the summary documents, important as they

are, provide communication with beneficiaries <u>about</u> the plan, but that their statements do not themselves constitute the <u>terms</u> of the plan . . . .").

### b. *Weiss-Aug's Adoption of the Aetna PA Policy as Part of Its ERISA Plan*

Next, Plaintiff argues that for an insurance policy to be considered a plan document, the insurance policy must indicate it is a plan document. Defendants argue that an insurance policy need not state it is a plan document for it to be legally designated as such. Further, Defendants argue that Weiss-Aug believed the Aetna PA Policy to be a plan document.

<u>Horn v. Berdon, Inc. Defined Ben. Pension Plan</u>, 938 F.2d 125 (9th Cir. 1991) is instructive here. There, the Ninth Circuit determined that a board resolution was a plan document. <u>Id.</u> at 127-28. In reaching this holding, the Ninth Circuit stated:

> ERISA requires only that an employee benefit plan be established and maintained by a "written instrument." 29 U.S.C. § 1102(a)(1). No additional formalities are required. In particular, there is no requirement that documents claimed to collectively form the employee benefit plan be formally labelled as such. We see no reason to require an employer to comply with such a formality not imposed by law.

<u>See also</u> <u>Tetreault v. Reliance Std. Life Ins. Co.</u>, 769 F.3d 49, 55 (1st Cir. 2014) (citing the above <u>Horn</u> quotation favorably); <u>Milwaukee Area Joint Apprenticeship Training Comm. v. Howell</u>, 67 F.3d 1333, 1338 (7th Cir. 1995) (same). Neither Weiss-Aug nor

Aetna was obligated to label the Aetna policies as ERISA plan documents for them to serve as such.

Moreover, there is evidence that Weiss-Aug adopted the Aetna PA Policy as a plan document, because Myshkoff stated they did. Plaintiff's citation to Myshkoff's deposition is misleading. First, the question posed to Myshkoff did not ask what she believed to be an ERISA plan document, but whether anyone else identified to her documents as ERISA plan documents. Second, Myshkoff clearly stated she believed that the insurance policies from Aetna constituted an ERISA plan:

> Q.   Okay.  What other documents have ever been identified as constituting the ERISA plan?
> * * *
> A.   Other documents that have been identified and that provided are the certificate of coverage, the agreements, the plan design documents.  Those are the documents I'm familiar with and that I've seen.

(objections omitted).  The Aetna PA Policy, comprised of the group agreement and certificate of coverage, was identified by Myshkoff as a document "constituting the ERISA plan" at Weiss-Aug.  Myshkoff was the plan administrator for the Weiss-Aug Plan.  She was in the best position to identify which documents did and did not constitute the Weiss-Aug Plan.  Plaintiff's argument does not show that the Aetna PA Policy was not a Weiss-Aug Plan document.[10]

---

[10] Plaintiff's argument in their reply brief requiring adoption of the Aetna PA Policy through the formal procedure set forth in

Plaintiff is incorrect—as argued in his reply brief—that the case law requires an employer to specifically intend to designate particular documents as its ERISA plan documents. Instead, Menkes stands, in part, for the proposition that a plan only comes to fruition when the employer "has expressed an intention to provide benefits on a regular and long-term basis." 762 F.3d at 290. Even it did, Myshkoff, the plan administrator, testified that she believed the certificates of coverage and the group agreements — the Aetna policies — constituted the ERISA plan.

### c. The Effects of the Alleged ERISA Violations on whether the Aetna PA Policy is an ERISA Plan Document

Sections IV, V, and VII-X of Plaintiff's Motion for Partial Summary Judgment detail alleged ERISA violations (separate and apart from those contained in the amended complaint) committed by Aetna and Weiss-Aug. Before addressing these arguments, it is important to clarify what roles Aetna and Weiss-Aug played. Aetna provided insurance to Weiss-Aug to offer to its employees.

---

the so-called ERISA Master Plan document is also unavailing. Plaintiff has not brought forward this document and, as a result, cannot cite to any breach of procedure supposedly contained in it. The case law cited is also unhelpful, as those cases are concerned with adoption or amendment when there is a single, formal document delineating the procedure that must be followed. ERISA does not require such a document and there is no such document here.

Weiss-Aug served as the "plan sponsor" and Myshkoff, an employee of Weiss-Aug, was the "plan administrator" of the ERISA plan.

In response to all of Plaintiff's arguments, which are described separately below, Defendants argue: (1) they were neither the plan sponsor or plan administrator, so should not suffer the legal consequences of any alleged violations by those individuals/entities; (2) they met all duties and obligations required of them under ERISA and corresponding regulations; and (3) Minerley, at the very least, had electronic access to the Aetna PA Policy and the Aetna NJ Policy.

### i. Section IV

Plaintiff makes two arguments under Section IV. First, Plaintiff argues that a summary plan document ("SPD") cannot alter the terms of an ERISA plan. Second, Plaintiff argues that Aetna's ability to cancel or change its insurance policy at any time circumvents the ERISA requirement that a plan administrator cannot unilaterally alter the terms of the ERISA plan.

Plaintiff's first argument is irrelevant to the facts of this case. No SPD is at issue in this case, and Defendants are not claiming that an SPD's terms supersede those of their own insurance policies.[11] In fact, Defendants argue the opposite.

---

[11] Plaintiff argues in Section X that because only a summary plan document was disseminated to employees, only its terms may control. This is contradictory to Plaintiff's own argument. Plaintiff's contention is also unsupported by record facts, as

Plaintiff's second argument is not supported by the facts or the ERISA statue. If Aetna had chosen to terminate its contract with Weiss-Aug, it would not have terminated Weiss-Aug's entire ERISA plan, just a portion of it.[12] Moreover, as Defendants suggest, 29 U.S.C. § 1341 does not prohibit Aetna, but the plan administrator, Myshkoff.

Plaintiff's amendment argument also misses the mark. Because the Aetna policies are a part of the ERISA plan, they delineate the amendment procedures agreed to by the plan sponsor, Weiss-Aug. If Aetna amends its policies as required under the policy, then amendment is proper, as Weiss-Aug agreed to this amendment procedure when it procured the insurance. Plaintiff does not complain that any amendment was in violation of the insurance policies.

> ii. Section V

In this section, Plaintiff argues that because Aetna made changes to the Aetna PA Policy and did not notify the insureds, the Aetna PA Policy cannot be an ERISA plan document.

---

Plaintiff had access to the Aetna PA Policy through an online portal.

[12] Plaintiff has continually conflated the ERISA plan with an ERISA plan document. These are not the same. ERISA plan documents compose the ERISA plan. ERISA plan documents can include a group of insurance policies, as discussed supra.

Again, Plaintiff incorrectly states that Aetna was a plan administrator.[13]  The ERISA regulation found at 29 C.F.R. § 2520.104b-3 does not require Aetna to provide a "[s]ummary of material modifications to the plan;" it requires Myshkoff, the plan administrator, to provide it.  While, undoubtedly, amendments were made, Plaintiff does not cite to any fact of record to support his contention that notice of the change to the policy was not given to him.  It is also undisputed that Minerley could access his Aetna policies at any time through an online portal.  Even if Aetna was required to give notice, Plaintiff provides no fact — as is his obligation at summary judgment — showing that Aetna did not provide notice.

### iii.  Section VII and VIII

Plaintiff argues here that Aetna PA Policy was never disclosed to Minerley as required under ERISA.  Plaintiff admits that the Aetna NJ Policy was disclosed to Minerley, and as a result states that only the Aetna NJ Policy may control.  As stated previously, the undisputed evidence shows that Minerley had access to the Aetna PA Policy through an online portal.  Minerley states in his declaration that he never received the Aetna PA Policy from Defendants or his employer.  But, he admits

---

[13] Here, Plaintiff states Aetna is a "claims administrator and not a Plan sponsor."  In context, it appears that the Plaintiff meant to say Aetna is a plan administrator.

in his deposition that he accessed the Aetna website where this exact plan was stored.  While the Aetna PA Policy may not have been distributed to him in paper form, it was available to him through the online portal.  Whether he chose to access it or not does not excuse him from its obligations.

Plaintiff also cites two cases from the Second Circuit in his reply brief concerning the legal consequence of not providing a plan document.  Neither case changes this Court's course.  In <u>Burke v. Kodak Ret. Income Plan</u>, 336 F.3d 103 (2d Cir. 2003), the Second Circuit examined a situation where an SPD conflicted with a plan.  <u>Burke</u> is not this case, as the concern here is whether the Aetna PA Policy was available to Minerley.  The other case, <u>Davis v. NMU Pension & Welfare Plan</u>, 810 F. Supp. 532 (S.D.N.Y. 1992) concerns the application of New York state civil practice rules and an attempt to shorten a statute of limitations period.  The court found that the plan had failed to include the shortened limitations period in the "actual trust agreement establishing the Plan or in collective bargaining agreements."  <u>Id.</u> at 534.  The terms at issue here were disclosed in the Aetna PA Policy, so there is no issue with whether the terms were improperly disclosed in another document.[14]

---

[14] Plaintiff similarly argues under section IX that the Aetna PA Policy could not constitute an ERISA plan document because it

24

<u>Plaintiff's Arguments in His Response to</u>
<u>Defendants' Motion for Summary Judgment</u>[15]

Plaintiff's make two other arguments within their response

to Defendants' Motion for Summary Judgment.  First, Plaintiff

argues that Defendants violated a rule that plan benefits may

not be determined by the domicile of the plan member.  Second,

Plaintiff again argues that the subrogation right is not a part

of the ERISA plan.

Plaintiff's first argument is incorrect.  It is important

to first note that Plaintiff has misquoted <u>Prudential Ins. v.</u>

<u>Doe</u>, 140 F.3d 785 (8th Cir. 1998).  This case does not stand for

---

was not made available for inspection nor were copies furnished.
As detailed <u>supra</u>, it is uncontested that Minerley admitted he
had access to an Aetna online portal where his policies were
stored.  He also admitted that he logged into this account.
Plaintiff does not rebut this fact.  It was available for
inspection and electronic copies were furnished.  Again,
Plaintiff's argument that Weiss-Aug never received the policies
is incorrect, as Weiss-Aug received a March 4, 2010 letter
containing the Aetna policies.  Finally, Plaintiff does not
argue that a failure by the plan administrator, Myshkoff, to
distribute copies of the policies automatically voids the
insurance.  Plaintiff's argument in his reply brief that
disclosing the wrong documents requires the Court to enforce
only the documents disclosed is similarly inapplicable.  Because
this Court finds that the Aetna PA Policy was disclosed, this
case law is unavailing.

[15] Plaintiff presented a third argument concerning <u>Loren v. Blue</u>
<u>Cross & Blue Shield</u>, 505 F.3d 598 (6th Cir. 2007).  This
argument is not on point.  <u>Loren</u> states that the filing of a
single Form 5500 creates the presumption that the "employer
intended to create only one ERISA plan."  <u>Id.</u> at 605-06.
Defendants do not assert that there is more than one ERISA plan,
just that there are multiple ERISA plan documents — the Aetna
policies — that make up the substance of that plan.

the proposition that "parties may not contract to choose a state law as the governing law in an ERISA-governed plan" (emphasis added) but that "parties may not contract to choose state law as the governing law of an ERISA-governed benefit plan." Id. at 791. The addition of "a" alters the meaning of the quote. Aetna did not choose state law as the governing law, as it contracted to have federal and Pennsylvania law apply to the Aetna PA Policy.

Moreover, Plaintiff's reliance on Conkright v. Frommert, 559 U.S. 506 (2010) is misplaced. The opinion in Conkright concerned whether the Second Circuit may alter the standard of review of a District Court over a plan administrator when a plan administrator has power under the ERISA plan to construe ambiguous terms. The Supreme Court's quote, stating that "[b]enefits cannot be different depending upon where" a beneficiary resides, had no relation to whether the beneficiaries were covered by different insurance policies. Id. at 521. The Supreme Court was concerned that creation of different law at the Circuit level may give rise to different interpretations and different rights for beneficiaries under the same ERISA plan. Obviously, this is not the case here. Plaintiff acknowledges such in a footnote, stating that insurance policy coverage may differ from state-to-state under ERISA.

Plaintiff's second argument also fails.  As discussed supra, the Aetna PA Policy clearly discloses that Aetna has a subrogation right.  Whether or not a SPD complies with 29 C.F.R. § 2520.102-3(l) is of no moment.  That regulation governs the actions of the plan administrator, not the insurance company.

As a result, Plaintiff's Partial Motion for Summary Judgment will be denied.

**D. Applicability of the Aetna PA Policy to Minerley**

This Court has determined that the Aetna PA Policy is an ERISA plan document under Weiss-Aug's employer-sponsored benefits program.  Thus, it has rejected all of Plaintiff's arguments that the ERISA statute or its corresponding regulations preclude the Aetna PA Policy from being considered in this case.  It is undisputed that Minerley was a beneficiary under the Aetna PA Policy and that the Aetna PA Policy paid for all of the health benefits he received following his accident.  Therefore, the threshold issue of which insurance policy applies to Minerley has been addressed: it is the Aetna PA Policy.

**E. Plaintiff's Requirement to Exhaust Administrative Remedies**

Defendants assert in their motion for summary judgment that Plaintiff's claims are improperly before this Court because Plaintiff has failed to exhaust administrative rights as required under the Aetna PA Policy.  Because this Court finds

that the Aetna PA Policy applies to this dispute and that it contains an administrative exhaustion requirement, this Court will start by examining Defendants' argument concerning Minerley's requirement to exhaust administrative remedies.

The law is clear on this point: "[e]xcept in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990)) (omission in original).  However, "[a] plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so."  Id. (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)). First, this Court will determine whether exhaustion is required, then this Court will determine whether exhaustion would be futile.

There are two ways in which Defendants argue exhaustion may be required under the Aetna PA Policy.  First, the request for reimbursement may be considered an "adverse benefit determination" because the reimbursement resulted "in denial, reduction, or termination of a benefit or the amount paid for it."  An adverse benefit determination may be made when Aetna determines that a benefit "is excluded from coverage."  There is no doubt that Aetna required a reimbursement reduced or

terminated the health benefit that Minerley received, namely, the emergency services after his accident. This was a determination that these emergency services were excluded from coverage because a third-party was legally obligated to pay for them.

Once an adverse benefit determination is made, the beneficiary must make use of the Aetna PA Policy's appeal process before bringing an action in court. As the Aetna PA Policy states, the appeal process is "mandatory and must be exhausted prior to . . . the establishing of any litigation . . . regarding either any alleged breach of the **Group Agreement** or **Certificate** by **HMO**, or any matter within the scope of the **Complaints** and **Appeals** process." (emphasis in original).

Second, Plaintiff's dissatisfaction with the reimbursement request may be considered a "complaint." Under the Aetna PA Policy, a complaint "is an expression of dissatisfaction about . . . the quality of coverage, operations or management policies of the **HMO**." If Minerley was unhappy with Aetna's reimbursement policy, which the present years-long litigation conclusively shows he is, then he had a "complaint." A complaint has a separate administrative track than an appeal. This separate track is still "mandatory and must be exhausted prior to . . . the establishing of any litigation . . . regarding either any alleged breach of the **Group Agreement** or **Certificate** by **HMO**, or

any matter within the scope of the **Complaints** and **Appeals** process." (emphasis in original).

This Court finds that Minerley had, at least, a contractually defined "complaint."  Minerley's dissatisfaction with the "quality of coverage, operations or management policies" of the Aetna PA Policy or the Aetna Defendants — in other words, his dissatisfaction with the reimbursement provisions — was subject to administrative exhaustion requirements.  It is undisputed that Minerley never complained to Aetna when he received the reimbursement request in July 2010 and never worked his way through the prescribed administrative process.  This was contractually required before the instant litigation could be filed.  This Court finds that exhaustion is contractually required.

Plaintiff attempts to resist the clear terms of the Aetna PA Policy by submitting seven different arguments.  These arguments center variously on the definitions and procedures concerning "adverse benefit determinations" and "claims."[16] Plaintiff's arguments are unavailing.  Even if this Court determined that there was no "claim" or no "adverse benefit determination" it is clear that Minerley had a "complaint" about

---

[16] The Court notes here that Plaintiff's citations in this section of their brief are all to the Aetna NJ Policy, not the Aetna PA Policy.  This makes a difference, as the language differs between the two policies.

his Aetna PA Policy.  Minerley was obligated to exhaust his administrative remedies under the contract before bringing this case to this Court.

Plaintiff makes several other arguments concerning the exhaustion requirement in the Aetna PA Policy.  First, Plaintiff argues that 29 C.F.R. § 2590.715-2719 required Defendants to send a "Notice of Adverse Benefit Determination" in a certain manner.  Defendants correctly point out that this regulation, per subsection (g), notes it is only applicable to group health plans beginning on or after January 1, 2017.  This plan began in 2009.  Second, Plaintiff does not address why Minerley's "claim" is still not subject to administrative exhaustion.  Plaintiff is not deemed to have exhausted his administrative remedies per 29 C.F.R. § 2590.715-2719.

Second, Plaintiff argues that the reimbursement provision of the Aetna PA Policy is ambiguous as to whether Plaintiff must appeal a reimbursement denial.  It is clear that Plaintiff has a "claim" and did not pursue his administrative remedy under the Aetna PA Policy.  He cannot complain about the allegedly poor draftsmanship of another section, when the section on exhaustion was clear.  This Court need not reach New Jersey law on the subject, to the extent it applies.

Third, Plaintiff argues that this Court is not deprived of subject matter jurisdiction just because he did not exhaust his

administrative remedies.  He also admits that it is a "basic tenet" of administrative law that exhaustion is required as a prerequisite to suit.  This Court declines to exercise its discretion to ignore this "basic tenet," especially when Plaintiff provides no good reason to ignore it.

Fourth, Plaintiff argues that this case presents solely questions of statutory interpretation, not medical or plan expertise.  As presented by Plaintiff, that is not this case.  This case centers on the interpretation of an insurance policy and Defendants right to reimbursement.  The interpretation of the Aetna PA Policy is something those involved in Aetna's administrative review process are keenly aware of and well-versed in.  Again, the Court declines to exercise its discretion to ignore the exhaustion requirement.

Fifth, Plaintiff argues that administrative exhaustion principles do not apply when there are claims of across-the-board errors.  Plaintiff cites Sportscare of Am., P.C. v. Multiplan, Inc., No. 10-cv-04414, 2013 U.S. Dist. LEXIS 54947, at *31-32 (D.N.J. Apr. 17, 2013) for this proposition.  This case is distinguishable because, in relevant part, the Court there found that the administrative exhaustion requirement under the contract was inapplicable.  Id.  In other words, the situation the claimant presented in that case did not fit within the terms of the contract.  This Court finds Plaintiff has a

"claim" and was required to pursue administrative remedies before bringing it to this Court.

Moreover, there are fact-specific determinations that are made before any reimbursement demand is made.  Aetna must determine what policy covers the individual, what policy paid for the health care, whether the policy provides a subrogation right, and whether the situation gives rise to that right.

Finally, Plaintiff argues that exhaustion is not required because it would be futile.  Generally, "[w]hether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonabl[y] in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." Harrow, 279 F.3d at 250.

Plaintiff has not shown that any factor applies to this case.  It is undisputed that Plaintiff did not bring his "claim" to Aetna, has not shown that Aetna has a "fixed policy denying benefits", has not shown that Aetna failed to comply with its own procedures, and has not provided testimony from Aetna stating that an administrative appeal would be futile.  Instead,

Plaintiff decided to reimburse Aetna and then bring suit almost immediately thereafter.  Plaintiff's argument concerning futility is factually and legally unsupported.

Thus, Plaintiff has presented no reason why this Court should not require, as a prerequisite to suit, Plaintiff to exhaust administrative remedies.

**F.    Plaintiff's Claims Requiring Administrative Exhaustion**

Plaintiff presents a final argument.  Plaintiff argues that even if his claims are generally subject to exhaustion, the fiduciary duty claims he has pled are not subject to an administrative exhaustion requirement.  This issue was fully briefed and decided in this Court's prior order denying Defendants' Motion to Dismiss, Motion to Strike, and/or Motion for Summary Judgment [54, 64, 67, 68, 79, 80].  Defendants rely on essentially the same arguments and case law that they relied upon then to attempt to force these fiduciary duty claims into the exhaustion process now.  Thus, this Court will not disturb its previous holding.

This Court notes that Defendants also argue that Plaintiff's fiduciary duty claims should be dismissed. Unfortunately, Defendants spend little time discussing it.  For example, while Defendants contend that Pennsylvania law applies, Defendants do not show why either Pennsylvania law or ERISA would require this Court to dismiss these claims.  As argued,

without proper factual and legal support discussing each fiduciary duty claim pleaded by Plaintiff, this Court declines at this juncture to dismiss those claims because Defendants have not met their burden at summary judgment.

## CONCLUSION

Based on the foregoing analysis, Plaintiff's Partial Motion for Summary Judgment will be DENIED and Defendants' Motion for Summary Judgment will be GRANTED, IN PART, and DENIED, IN PART. All claims but the fiduciary duty claims will be dismissed.

An appropriate Order will be entered.


Date: September 29, 2018          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.