**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JAY MINERLEY, individually
and as class representative,

        Plaintiff,

    v.

AETNA, INC., AETNA HEALTH,
INC. (a NJ corp.), AETNA
HEALTH INSURANCE CO., AETNA
LIFE INSURANCE CO., and THE
RAWLINGS COMPANY, LLC,

        Defendants.

Civil No. 13-1377 (NLH/KMW)

**OPINION**

---

**APPEARANCES**:

CHARLES KANNEBECKER
KANNEBECKER LAW
104 W. HIGH STREET
MILFORD, PA 18337

AND

RYAN N. BOLAND
MATTHEW D'ANNUNZIO
DON P. FOSTER
OFFIT KURMAN, P.A.
1801 MARKET STREET, SUITE 2300
PHILADELPHIA, PA 19103

    *Attorneys for Plaintiff Jay Minerley.*

ANTHONY M. CHRISTINA
RICHARD W. COHEN
GERALD LAWRENCE
URIEL RABINOVITZ
LOWEY DANNENBERG, P.C.
44 SOUTH BROADWAY, SUITE 1100
WHITE PLAINS, NY 10601-2310

*Attorneys for Defendants Aetna, Inc., Aetna Health, Inc. (a NJ corp.), Aetna Health Insurance Co., Aetna Life Insurance Co., and the Rawlings Company, LLC.*

**HILLMAN**, District Judge

This case concerns the interpretation of an insurance policy and whether the insurer may require the insured to reimburse medical costs paid by the insurer when the insured receives an award from a third-party tortfeasor.  Currently before the Court is Plaintiff's Motion for Reconsideration and Defendants'[1] Motion for Summary Judgment.  For the reasons discussed herein, Plaintiff's Motion for Reconsideration will be denied and Defendants' Motion for Summary Judgment will be granted.

## BACKGROUND

Our recitation of the facts is taken from Plaintiff's and Defendants' newly filed statements of material facts and those facts which the Court previously found undisputed in its September 29, 2018 Opinion.  This Court notes factual disputes where relevant.  Plaintiff Jay Minerley was an employee of Weiss-Aug Company Inc. ("Weiss-Aug"), a New Jersey company, from February 2007 through April 2017.  During that time, Minerley

---

[1] For purposes of this Opinion, Aetna, Inc., Aetna Health, Inc., Aetna Health Insurance Co., and Aetna Life Insurance Co. will be referred to as "Aetna" and Rawlings Company LLC will be referred to as "Rawlings."  Otherwise, the Court will refer to these entities collectively as "Defendants."

enrolled in employer-sponsored health benefits provided by
Weiss-Aug.  Of relevance, Minerley attended a Weiss-Aug employee
benefits meeting on October 27, 2009 and received a plan design
document, which provided a top-level overview of the benefits
offered.  This document did not contain any discussion of a
subrogation right.[2]

Minerley participated in the Weiss-Aug sponsored healthcare
benefits plan (the "ERISA Plan").  Debra Myshkoff was the plan
administrator for the ERISA Plan and Weiss-Aug was the plan
sponsor.  Weiss-Aug received copies of the relevant policies
provided by Aetna.  It is unclear whether Myshkoff provided
copies of the policies at the October 2009 benefits meeting, but
it is undisputed that Minerley had access to plan documents
through an electronic portal provided by Aetna.

As part of the Weiss-Aug Plan, Minerley received benefits
under an Aetna Citizen Choice Point of Service HMO Plan (the
"Aetna insurance policies" or the "Aetna policies").  Minerley's
insurance benefits consisted of two policies: the Pennsylvania
HMO policy (the "Aetna PA Policy"), underwritten by Aetna Health
Inc., and the New Jersey Non-Referred policy (the "Aetna NJ

---

[2] Plaintiff asserts Weiss-Aug described this document "as the
ERISA Plan."  (Pl.'s SOMF ¶ 16.)  But, Debra Myshkoff's
testimony cited by Plaintiff does not support this assertion.
Myshkoff stated that the "Plan Design Document" was "a plan
description" and "not a summary plan description."  (Pl.'s Mot.
for Partial Summ. J., Ex. E 29:20-25.)

Policy"), underwritten by the Aetna Health Insurance Company. The Aetna PA Policy provided in-network benefits and emergency services while the Aetna NJ Policy provided out-of-network and non-referred medical services.

This Court previously determined that the Aetna PA Policy is the insurance policy that controls in this case.[3]  The Aetna PA Policy contains two documents.  The first document was an agreement between Weiss-Aug and the underwriting Aetna entity. The second document was a Certificate of Coverage ("Certificate").  Within this Certificate is a section pertaining to the underwriting Aetna entities' right of recovery against an insured in specific situations.  In relevant part, the Aetna PA Policy's Certificate stated:

> The **Member** also specifically acknowledges **HMO's** right of reimbursement.  This right of reimbursement attaches, to the fullest extent permitted by law, when **HMO** has provided health care benefits for injuries or illness for which a third party is and the **Member** and/or the **Member's** representative has recovered any amounts from the third party or any party making payments on the third party's behalf.  By providing any benefit under this **Certificate**, **HMO** is granted an assignment of the proceeds of any settlement, judgment or other payment received by the **Member** to the extent of the full cost of all benefits provided by **HMO**.

(emphasis in original).  This was amended effective November 1, 2009, to state:

---

[3] The Court notes that Plaintiff disputes this holding of the Court.  The Court will address Plaintiff's argument on this point when it analyzes Plaintiff's Motion for Reconsideration.

By accepting benefits under this Plan, the **Member** also specifically acknowledges **HMO**'s right of reimbursement. This right of reimbursement attaches when this Plan has provided health care benefits for expenses incurred due to Third Party injuries and the **Member** or the **Member's** representative has recovered any amounts from any sources, including but not limited to: payments made by a third Party or any insurance company on behalf of the Third Party . . . .

(emphasis in original).

Myshkoff, the Employee Retirement Income Security Act ("ERISA") plan administrator for Weiss-Aug, stated that the Aetna PA Policy was the relevant ERISA plan document for the time period at issue. Weiss-Aug submitted a single Form 5500 for the year 2010, received one plan identification number, 502, and identified through various schedules that Aetna Health, Inc., Sun Life and Health Insurance Company, and Unum Life Insurance Company of America would provide various benefits.

On May 20, 2010, Minerley was involved in a motor vehicle accident in Morris County, New Jersey. He sustained multiple injuries, including fractured ribs, fractured vertebrae, and herniated disks. He was treated at St. Clare's Hospital and Morristown Memorial Hospital. Minerley's medical treatments totaled $3,512.82 and were paid for by his Aetna PA Policy.

Minerley retained a personal injury attorney, Charles Kannebecker. Defendant Rawlings, which was Aetna's subrogation and reimbursement claims vendor at the time, notified Kannebecker on July 21, 2010 of the Aetna PA Policy's

reimbursement provision discussed <u>supra</u>. Minerley later

successfully recovered from the third-party tortfeasor in this

accident. On January 9, 2013, Rawlings received a reimbursement

check from Kannebecker, sent on Minerley's behalf, in the amount

of $3,512.82 — the amount of the health benefits provided.

Sometime after Minerley received Rawlings' subrogation

demand, Minerley asked the Weiss-Aug Human Resources Department

to provide him with a copy of his insurance policy. Minerley

claims now that he received the Aetna NJ Policy, not the Aetna

PA Policy. Defendants' dispute the veracity of this assertion,

citing previous declarations in which Minerley did not state he

received the Aetna NJ Policy and appears to be unsure of what he

received. Solely for purposes of deciding the pending motions,

this Court will assume that only the Aetna NJ Policy was given

to Minerley by Weiss-Aug.

To the extent relevant, Minerley asserts that "Aetna never

advised Debra Myshkoff or Weiss-Aug that it sought repayment of

medical benefits paid to Weiss-Aug employees in the event that

the employees receive a personal injury recovery." (Pl.'s SOMF

¶ 12.) Nor, according to Plaintiff, did Myshkoff or Weiss-Aug

advise Weiss-Aug employees that Aetna may possess a subrogation

right. Defendants dispute this assertion, stating the Court has

already found (1) that Aetna sent the Aetna PA Policy to Weiss-

Aug and (2) that Minerley had access to the Aetna PA Policy

online.  Thus, here there appears to be no dispute.  While Aetna
may not have explicitly stated to Weiss-Aug that there was a
reimbursement right, and Weiss-Aug may not have explicitly told
Minerley the same, both Weiss-Aug and Minerley had access to
this information.

Minerley did not contest this policy provision through the
administrative procedures set forth in the Aetna PA Policy (or
the Aetna NJ Policy) as described supra.  Minerley claims he did
not do so because he never received a "Notice of Adverse Benefit
Determination."  Defendants do not contest that Minerley did not
receive a document with that title, but do state that the July
21, 2010 letter from Rawlings and their own filings in this case
serve as notice of their adverse benefit determination.  Instead
of pursuing his administrative remedies, Minerley, along with
Michelle Roche and Tim Singleton, filed a complaint against
Defendants in the New Jersey Superior Court, Law Division,
Atlantic County.  Defendants removed the action to this Court on
March 7, 2013.  Motion practice, multiple opinions, and
discovery ensued.

Currently, Minerley is the only Plaintiff in this case.
Minerley, through his amended complaint, claimed the following:

- Aetna violated 29 U.S.C. § 1132(a)(1)(B) by denying
  benefits to which Minerley was entitled; and

- Aetna violated 29 U.S. § 1004(a)(1)(A) and 29 U.S.C.
  § 1132(a)(3) (concerning breaches of fiduciary duty) by
  requiring reimbursement of Minerley's tort claim, for
  allegedly misrepresenting its right to reimbursement, and
  by failing to avoid the alleged conflict of interest in
  demanding reimbursement.

On September 29, 2018, upon cross-motions for summary
judgment filed by the parties, the Court dismissed all claims
against all Defendants except for those claiming a breach of
fiduciary duty.  On October 15, 2018, Plaintiff filed a Motion
for Reconsideration on certain factual and legal findings of
this Court's September 29, 2018 Opinion and Order.  On January
25, 2019, Defendants filed a Motion for Summary Judgment on the
remaining claims for breach of fiduciary duty.  These motions
were fully briefed and are now ripe for adjudication.

**ANALYSIS**

**A.    Subject Matter Jurisdiction**

This Court exercises jurisdiction pursuant to 28 U.S.C. §
1331 and 29 U.S.C. § 1132(f).

**B.    Motion for Reconsideration Standard**

The Local Rule 7.1(i) standard applies to Plaintiff's
Motion for Reconsideration.  Under Local Rule 7.1(i), the moving
party must demonstrate "'the need to correct a clear error of
law or fact or to prevent manifest injustice.'"  <u>Andreyko v.</u>

<u>Sunrise Sr. Living, Inc.</u>, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (citations omitted).[4]  In doing so, the moving party must show the "'dispositive factual matter or controlling decisions of law'" it believes the court overlooked in its initial decision. <u>Mitchell</u>, 913 F. Supp. 2d at 78 (citation omitted).  A mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law.  <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

### C.   Plaintiff's Motion for Reconsideration

Plaintiff asserts this Court must reconsider its September 29, 2018 Opinion and Order granting Defendants' partial summary judgment and denying Plaintiff partial summary judgment as they related to Plaintiff's ERISA denial of benefits claims. Plaintiff rests his reconsideration argument on two overall arguments: (1) the Court erred when it determined that the Aetna PA Policy controlled[5] because it was never lawfully distributed and (2) the Court erred when it found 29 C.F.R. § 2590.715-2719

---

[4] These are the exact grounds on which Plaintiff bases its Motion for Reconsideration.  (Pl.'s Mot. for Recons. 1 ("Plaintiff moves this Court for reconsideration of its [September 29], 2018 Order to correct a clear error of law and fact and to prevent manifest injustice.").)

[5] To be clear, the Court did not find that the Aetna PA Policy was Weiss-Aug's ERISA Plan, just that it was a plan document that – which together with other insurance policies and benefits purchased by Weiss-Aug – comprised Weiss-Aug's ERISA Plan.

was inapplicable. Defendants disagree, arguing there is no reason why this Court must reconsider its previous decision. The Court will address each argument in turn.

a. Whether the Alleged Violations of ERISA's Disclosure Regulations by Weiss-Aug Warrant Reconsideration of the Dismissal of Certain ERISA Claims Against Defendants

Plaintiff's first argument can be further separated into two distinct parts. First, Plaintiff argues electronic disclosure of the ERISA Plan was insufficient in this particular circumstance. Second, Plaintiff challenges whether there were sufficient facts to support the conclusion that the Aetna PA Policy was ever received by Weiss-Aug and distributed to the relevant employees, here Plaintiff. Defendants essentially argue the Court has correctly decided that Defendants did not violate ERISA regulations and that a non-party's alleged violation of ERISA regulations has no effect on this case. Therefore, the ERISA denial of benefits claims were properly dismissed.

Defendants are correct. Plaintiff has again ignored the larger issue. Whether the Aetna PA Policy, or any policy, was distributed correctly under ERISA regulations has no bearing on whether Defendants violated ERISA. The disclosure regulations provided by Plaintiff, 29 C.F.R. § 2520.104b-1 places the disclosure requirement on "[t]he administrator of an employee

benefit plan." Plaintiff does not ask this Court to reconsider its decision holding Defendants are not "plan administrators" per the ERISA statute.

Undoubtedly, Defendants are not the plan administrators. Plaintiff again appears to assume that there is only one type of administrator and Defendants fall within that category. That is incorrect. The decision in Butler v. United Healthcare of Tennessee, Inc. by the Sixth Circuit Court of Appeals succinctly sums up this important distinction Plaintiff fails to draw:

> ERISA-governed plans, as it turns out, often have two types of "administrators." Corporate Counsel's Guide to ERISA § 4:6 (2014). The first type — a claims administrator — is the entity that "administers claims for employee welfare benefit plans and has authority to grant or deny claims." Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006); see also Corporate Counsel's Guide to ERISA § 4:6 ("[A] claims administrator is the party responsible for claims review and approval under the given benefit plan."). The second type — a plan administrator — is usually the "employer who adopted the benefit plan in question." Corporate Counsel's Guide to ERISA § 4:6. "The phrase 'plan administrator' should not be confused with the term 'claims administrator.' . . . [T]h[e] role [of claims administrator] usually does not confer on that party the status of plan administrator." Id. Quite often, indeed, the claims administrator and the plan administrator are not the same. See, e.g., Moore, 458 F.3d at 424-25, 438 (distinguishing between the employer/plan administrator and the insurance company/claims administrator); see also Fendler v. CNA Grp. Life Assurance Co., 247 F. App'x 754, 755, 758-59 (6th Cir. 2007).

764 F.3d 563, 570 (6th Cir. 2014). In Butler, the Sixth Circuit found that the insurance provider – which decided whether claims would be granted or denied under the insurance policy – was not

the plan administrator and further found that it could not be held liable for a violation of a disclosure requirement under ERISA. <u>Id.</u> at 569-71. Because Defendants were not the plan administrators here, the Court cannot find a violation of the disclosure regulations allows imposition of liability against Defendants under ERISA.

But, that is only part of Plaintiff's argument. Plaintiff appears to argue that even if Myshkoff is the plan administrator, her failure to disclose the Aetna PA Policy means that Defendants lose their right to assert it. Plaintiff has cited no section of ERISA or implementing regulation, nor any case law suggesting that a disclosure violation by a plan administrator would void an insurance contract that an insurer executed with the plan sponsor. Nor is the Court able to find a case that states so. Plaintiff sums up the two cases it does cite – <u>Burke v. Kodak Retirement Income Plan</u>, 336 F.3d 103 (2d Cir. 2013) and <u>Davis v. NMU Pension and Welfare Plan</u>, 810 F. Supp. 532 (S.D.N.Y. 1992) – as standing for the proposition that "the consequences of disclosing the wrong documents to employees must be placed on the employer." (Pl.'s Mot. for Recons. 11.)

Yet, here Plaintiff wishes to impose the consequences of the employer's alleged mistakes against the insurer. Allowing Plaintiff to impose those consequences against Defendants here would require the Court to rewrite ERISA and the surrounding

case law.  It would essentially impose the duty to disclose on the insurance company even though the regulations only impose that duty on the plan administrator.  Moreover, it would result in imposing a significant penalty on the insurance company even though it did not violate the regulation.  The Court cannot allow Plaintiff to perform an end-run around suing the parties it asserts are actually responsible, as it would upset the statutory balance created by Congress in enacting ERISA and the regulations which were promulgated to enforce it.[6]

Accordingly, the Court will deny Plaintiff's Motion for Reconsideration on these grounds.  The Court finds there has been no clear error of fact or law nor any manifest injustice.  Plaintiff's remaining arguments contained therein concerning the details of the disclosure requirements and whether or not Myshkoff or Weiss-Aug ever received the Aetna PA Policy are moot based upon the Court's analysis, <u>supra</u>.

b. <u>Whether 29 C.F.R. § 2590.715-2719 is Applicable</u>

Plaintiff also asserts that the Court's finding that 29

---

[6] Additionally, Plaintiff's argument is internally inconsistent. Plaintiff does not deny that he received benefits from Aetna after he was injured in a car accident.  It would be inappropriate to find that the Aetna PA Policy was void because of a disclosure violation yet allow Plaintiff to keep the funds Aetna paid for his treatment.  If the Aetna PA Policy is void – or even the Aetna NJ Policy, which Plaintiff has asserted is the controlling policy here – then Plaintiff's argument would seem to lead him to the same or similar outcome: no benefits.

C.F.R. § 2590.715-2719 was inapplicable was a clear error of law. The Court opined that this regulation was not applicable as it was only effective on or after January 1, 2017. Plaintiff argues here that it was asserting a violation under an older version of the regulation which was effective "for plan years beginning on or after September 23, 2010." (Pl.'s Mot. for Recons. 12.) Defendants agree the Court made an error in identifying the effective date, but argue this was a harmless error as (1) the effective date was still after the plan year at issue and (2) there were other bases for dismissal of this argument.

The Court finds it was mistaken in ruling that the effective date was January 1, 2017. While that is the effective date of a new version, that was not the effective date of the version at-issue. But, the Court additionally finds this was a harmless error. The undisputed facts show the Plaintiff's accident occurred in May 2010 and he received the benefits in May and June 2010. Obviously, the benefits he received were under an ERISA Plan with a plan year that both predated the final approval of the regulation at-issue (July 2010) and the effective date (plan years beginning on or after September 23, 2010).

Plaintiff explains that even though the benefits given were under an ERISA plan with a plan year preceding the regulation,

14

the subrogation demands were made after the regulation was deemed effective.  The legal import, according to Plaintiff, is that the regulation thus applied because subrogation demands were made while the regulation was effective.  This argument is inapposite.  To determine the regulation's effective date, the Court does not consider whether attempts to collect on a subrogation claim occurred after the effective date, but whether it involves a plan that has a plan year beginning on or after September 23, 2010.  Thus, the only relevant fact to determine whether the regulation is applicable is whether the actions concern an ERISA plan with a certain plan year.  The ERISA Plan precedes the plan year required by the regulation.  This regulation is inapplicable.[7]

Accordingly, this Court finds that Plaintiff's Motion for Reconsideration must be denied on these grounds.  Thus, the Court will deny Plaintiff's Motion for Reconsideration, in its entirety.

### D.    Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[7] Not only is Plaintiff's argument inapposite, but it would also essentially rewrite the regulation to govern conduct the relevant agency did not intend to govern.  That cannot be done by this Court.

affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa.
Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by "showing"—that is, pointing
out to the district court—that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof." (citing Celotex, 477 U.S.
at 325)).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial. Celotex, 477
U.S. at 324. A "party opposing summary judgment 'may not rest
upon the mere allegations or denials of the . . . pleading[s].'"
Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For
"the non-moving party[] to prevail, [that party] must 'make a
showing sufficient to establish the existence of [every] element
essential to that party's case, and on which that party will
bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F.
App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).
Thus, to withstand a properly supported motion for summary
judgment, the nonmoving party must identify specific facts and
affirmative evidence that contradict those offered by the moving
party. Anderson, 477 U.S. at 257.

**E.  Motion for Summary Judgment**

In its September 29, 2018 Opinion, this Court stated that
it could not decide on the briefing before it whether the
fiduciary duty claims asserted against Defendants may proceed.
As a result, Magistrate Judge Karen M. Williams ordered the
parties to complete further discovery, if necessary, and file
new summary judgment motions on the fiduciary duty claims.
Defendants thereafter filed a motion for summary judgment.

Defendants present three reasons why the fiduciary duty
claims asserted against them – both for loyalty and
misrepresentation – must be dismissed.  First, Defendants argue
Plaintiff's fiduciary duty claims are duplicative of his denial
of benefits claim, therefore requiring its dismissal per Third
Circuit case law interpreting ERISA.  Second, Defendants argue
even if the cause of action may proceed to the merits, they are
not fiduciaries nor were they acting in a fiduciary capacity.
Third, Defendants argue that there was neither a
misrepresentation made by them nor a breach of the duty of
loyalty in enforcing the Aetna PA Policy.

Plaintiff disagrees.  Plaintiff argues the claims are
permissible because the facts they are based on are
categorically different from those facts on which he based his
denial of benefits claim.  Plaintiff also argues that Defendants
may be fiduciaries as defined by ERISA because the statute does

not limit its definition of fiduciaries to the "plan administrator" or "plan sponsor."  Plaintiff argues – through the application of agency law and the actions of Weiss-Aug – that Defendants misrepresented which policy covered him in this instance.  Moreover, Plaintiff argues Defendants breached their duties of loyalty because (1) they determined Plaintiff was required to subrogate his claim and (2) the policies sold to Weiss-Aug were not uniform.

Before analyzing the parties' arguments and Plaintiff's claims, the Court lays out the elements of an ERISA fiduciary duty claim.  The statutory basis for an ERISA breach of fiduciary duty claim is found at 29 U.S.C. § 1104(a)(1)(A)(i). There, the statute stats: "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."  29 U.S.C. § 1104(a)(1)(A)(i).  The private cause of action is found at 29 U.S.C. § 1132(a)(3).

In implementing the private cause of action and ERISA's fiduciary requirements, the Third Circuit has found a plaintiff must establish four elements to show an ERISA breach of fiduciary duty claim: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that

misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003) (quoting Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001)).

Under ERISA case law, the Court cannot determine – in the abstract – whether Defendants are or are not fiduciaries, but must determine whether Defendants acted in a fiduciary capacity as to each claimed breach. See Fechter v. Conn. Gen. Life Ins. Co., 800 F. Supp. 182, (E.D. Pa. 1992) ("[A]s reflected by the statutory language of the definition, a person is a fiduciary only 'to the extent' he or she exercises control over those specific breaches of fiduciary duty on which plaintiffs base their claims." (citing 29 U.S.C. § 1002(21)(A)).

Therefore, it is most efficient to address each alleged breach to determine whether it may proceed past summary judgment. The breaches, as argued by Plaintiff are as follows: (1) Defendants breached their fiduciary duty because Weiss-Aug, as their agent, misrepresented which insurance policy controlled the benefits paid to Plaintiff and Defendants' subrogation rights; (2) Defendants breached their fiduciary duty of loyalty by demanding subrogation; (3) Defendants breached their fiduciary duty of loyalty by providing non-uniform benefits

based on the state of domicile of the beneficiary.  The Court
will consider each in turn.

> a. Whether Defendants Breached their Fiduciary Duties
> because Non-Party Weiss-Aug Gave Plaintiff the Aetna
> NJ Policy

Defendants argue, even if this Court were to assume that
Plaintiff's cause of action is proper and they owe a fiduciary
duty – i.e. are fiduciaries – that they have made no
misrepresentation to Plaintiff.  Defendants argument can be
boiled down thusly: because Defendants stated they had a
subrogation right and the Court has ruled – and Plaintiff has
admitted – there is a subrogation right under the Aetna PA
Policy, there has been no misrepresentation.

Plaintiff does not address this argument directly.
Instead, Plaintiff argues Weiss-Aug incorrectly provided him
with the Aetna NJ Policy instead of the Aetna PA Policy.
Obviously, it cannot be said that Defendants made a
misrepresentation to Plaintiff because the actions of Weiss-Aug
cannot be factually attributed to Defendants in this situation.
But, Plaintiff argues it may be legally attributed to Defendants
through the federal common law of agency created to implement
ERISA.

The only case law cited by Plaintiff in support of this
argument is Salyers v. Metropolitan Life Insurance Co., 871 F.3d
934 (9th Cir. 2017).  Citing the Restatement (Third) of Agency,

the Ninth Circuit read into ERISA the following agency
principles:

> The Restatement of Agency defines agency as "the
> fiduciary relationship that arises when one person (a
> 'principal') manifests assent to another person (an
> 'agent') that the agent shall act on the principal's
> behalf and subject to the principal's control, and the
> agent manifests assent or otherwise consents so to act."
> Restatement (Third) of Agency § 1.01 ([Am. Law Inst.]
> 2006). The legal consequences of an agent's actions may
> be attributed to a principal when the agent is acting
> within its authority. Restatement (Third) of Agency §
> 2.01 intro. note ([Am. Law Inst.] 2006). Additionally,
> a principal is generally charged with notice of facts
> that an agent knows or has reason to know and that are
> material to her duties as an agent. Restatement (Third)
> of Agency § 5.03 ([Am. Law Inst.] 2006).
>
> * * *
>
> The legal consequences of an agent's actions may be
> attributed to a principal when the agent has actual
> authority (express or implied) or apparent authority.
> Restatement (Third) of Agency § 2.01 intro. note ([Am.
> Law Inst.] 2006). "Express actual authority derives from
> an act specifically mentioned to be done in a written or
> oral communication." NLRB v. Dist. Council of Iron
> Workers of the State of Cal. & Vicinity, 124 F.3d 1094,
> 1098 (9th Cir. 1997). "Implied actual authority comes
> from a general statement of what the agent is supposed to
> do; an agent is said to have the implied authority to do
> acts consistent with that direction." Id. "Apparent
> authority results when the principal does something or
> permits the agent to do something which reasonably leads
> another to believe that the agent had the authority he
> purported to have." Hawaiian Paradise Park Corp. v.
> Friendly Broad. Co., 414 F.2d 750, 756 (9th Cir. 1969).

Id. at 939-40.

In this case, Plaintiff has not presented any evidence

which would suggest Weiss-Aug was Defendants' agent or that it

had express, implied, or apparent authority in making a

representation as to the rights and obligations of Plaintiff under any Aetna insurance policies. The contract between Aetna and Weiss-Aug[8] is part of the record. The relevant provisions disclose that Aetna and Weiss-Aug explicitly did not have an agency or employment relation. (Defs.' Reply Br. 4-5.) Obviously, this would disclose any express actual authority. Plaintiff presents no record evidence which would suggest the implied or apparent authority of Weiss-Aug to make representations on behalf of Aetna concerning the rights and obligations of an employee under the insurance policies.

Moreover, the Salyers case is distinguishable in multiple ways. Most importantly, in deciding the Salyers case, the Ninth Circuit stated: "[w]e cannot say whether Providence was acting with express actual authority as an agent of MetLife, because the contract and other relevant communications between Providence and MetLife are not in the record." Salyers, 871 F.3d at 940. As noted supra, the contract is in the record, is uncontested, and discloses that Aetna and Weiss-Aug explicitly did not have an agency or employment relation. (Defs.' Reply

---

[8] Plaintiff has presented no evidence of any relationship between Weiss-Aug and Rawlings. Although it does not appear Plaintiff argues Rawlings and Weiss-Aug have an agency relationship, the Court nevertheless additionally finds there is none between those two entities and that no representation by Weiss-Aug can be legally attributed to Rawlings.

Br. 4-5.) Therefore, it cannot be said that Aetna gave Weiss-Aug "express actual authority." <u>Salyers</u>, 871 F.3d at 940.

Moreover, the lynchpin of the Ninth Circuit's decision that the employer was the agent of the insurer was that the employer handled "nearly all the administrative responsibilities" of the life insurance benefits it offered to employees. <u>Id.</u> at 940 (citation omitted). The employer enrolled the employee in the life insurance plan, noted the amount of life insurance the employee wanted, and appeared to have the duty to collect evidence of insurability from those who elected to take the benefit. <u>Id.</u> at 936-38, 41.

Here, Plaintiff presents no evidence that Weiss-Aug performed these functions, nor that Weiss-Aug was Aetna's agent in informing employees what rights and obligations existed under Aetna's insurance policies. In fact, it appears from the evidence that Aetna kept that role for itself, as it ultimately determined an insured's eligibility for benefits. Plaintiff's argument here lacks both factual and legal support. This Court cannot allow a fiduciary duty claim based on Weiss-Aug's supposed misrepresentation proceed against Defendants.[9]

---

[9] Alternatively, Defendants are also correct that Plaintiff has not shown detrimental reliance. Plaintiff does not present any record evidence that shows reliance on <u>Weiss-Aug's</u> representation that the Aetna NJ Policy controlled the subrogation issue. The fact that Plaintiff was represented by counsel and that his counsel and Rawlings exchanged multiple

The remaining portion of Plaintiff's argument on this point solely concerns general case law on ERISA fiduciary duties as it relates to misrepresentations, actions taken by Weiss-Aug, not Defendants, and the contents of the Aetna PA Policy and Aetna NJ Policy. This portion of the argument, based on this Court's ruling, is moot and need not be addressed on the merits.

> b. Whether Defendants Breached their Fiduciary Duty of Loyalty by Enforcing the Subrogation Right under the Aetna PA Policy

Plaintiff argues Defendants breached their fiduciary duty of loyalty by asserting the subrogation right found in the Aetna PA Policy. Plaintiff argues Rawlings had a financial interest in recovering the benefits paid by Aetna on behalf of Plaintiff for emergency services. According to Plaintiff, this financial interest is in itself a breach of the fiduciary duty of loyalty, because a fiduciary must always act in the best interest of the beneficiary, here Plaintiff. Similarly, Plaintiff argues Aetna breached its fiduciary duty of loyalty because it had a financial interest in recovering money from Plaintiff. Whatever amount Plaintiff reimbursed Aetna went directly into Aetna's coffers instead of being used to pay for benefits for other beneficiaries.

---

letters suggests just the opposite: Plaintiff did not rely on Weiss-Aug's supposed misrepresentation.

Defendants present the common-sense argument that it cannot be a breach of the fiduciary duty of loyalty for an insurance company to enforce the terms of an insurance policy. The Court agrees. The Supreme Court did not address this question directly, but has been confronted by two cases where either an insurer or an ERISA plan administrator has brought suit against an insured under ERISA to enforce a reimbursement clause. US Airways, Inc. v. McCutchen, 569 U.S. 88 (2013); Sereboff v. Mid Atl. Med. Servs., 547 U.S. 356 (2006). In neither of those cases did the Supreme Court suggest that asserting a reimbursement right in an insurance contract may itself be a breach of fiduciary duty. This Court finds this persuasive. Plaintiff's fiduciary duty claims based on this breach of loyalty argument will be dismissed.

This claim is also soundly rebutted by another Supreme Court case. In the Supreme Court's decision concerning fiduciary duties owed by HMOs to patients under ERISA, the Supreme Court rejected just such a claim. Pegram v. Herdrich, 530 U.S. 211, 232 (2000). In deciding the question of whether "HMOs that make mixed decision in the course of providing medical care for profit" breach fiduciary duties because of their inherently divided loyalty, the Supreme Court found that the claim could not proceed because it "would be nothing less than the elimination of the for-profit HMO." Id. at 232-33.

The Supreme Court opined "that the <u>Judiciary</u> has <u>no</u> warrant to precipitate the upheaval that would follow a refusal to dismiss" the ERISA claim presented.  <u>Id.</u> at 233 (emphasis added).  This Court, as part of the Judiciary, must dismiss this claim as well.

      c. <u>Whether Non-Uniformity of Benefits is a Breach of Fiduciary Duty</u>

Plaintiff argues Defendants breached their fiduciary duties by offering non-uniform benefits based on the employee's place of domicile.  Plaintiff admits in a footnote that this argument was made in a previous motion and rejected by this Court and that it merely re-argues it here so that it ensures it is not waived in case of appeal.  This Court will not address this argument substantively.  Instead, this Court holds that for the same reasons discussed in its September 29, 2018 Opinion, it will reject Plaintiff's argument again here.

Accordingly, this Court will grant Defendants' Motion for Summary Judgment in its entirety and dismiss this case.  The remaining arguments made by Defendants are moot and the Court will not consider them on their merits.

<b><u>CONCLUSION</u></b>

Based on the foregoing analysis, Plaintiff's Motion for Reconsideration will be denied and Defendants' Motion for

Summary Judgment will be granted.  This case will be dismissed

in its entirety.

An appropriate Order will be entered.


Date: June 27, 2019                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.